[No. A126925. First Dist., Div. One. Mar. 22, 2011.]

Estate of HANS BARTSCH, Deceased.
ARDNT PELTNER, as Executor, etc., Petitioner and Respondent, v.
NORMAN BARTSCH HERTERICH, Objector and Appellant.

886

Counsel

Law Office of Ciarán O'Sullivan, Ciarán O'Sullivan; Hanson Bridgett, John A. Hartog, Inc., and David W. Baer for Objector and Appellant.

Thomas C. Tagliarini for Petitioner and Respondent.

Opinion

**DONDERO, J.**—Hans Bartsch died and willed his estate to particular family members and friends. He specifically left 14 percent of his estate to respondent Arndt Peltner and named him as the executor of the estate. Objector Norman Bartsch Herterich claimed he was decedent's only son and sole heir to the entire estate. The probate court approved an interim award of attorney fees and costs incurred by respondent in the ongoing will contest. On appeal, objector contends the award of attorney fees is improper under Probate Code section 11704 because respondent is both an executor and an heir, and therefore is not impartial. We affirm because we determine under the circumstances of this case the personal representative or executor may participate "as a party to assist the court" under Probate Code section 11704, subdivision (b).[1]

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On January 18, 2007, decedent executed his last will and testament. In the document, decedent states "I declare that I am not currently married and I have had no children, stepchildren or foster children." The will names approximately 20 beneficiaries, including family members and friends, most of whom are said to reside in Germany. The will gives 14 percent of the estate to respondent, who is also named as the will's executor. It makes no provision for objector, and further provides: "I have intentionally and with full knowledge omitted to provide for all of my heirs and relatives who are not specifically mentioned herein, and I hereby generally and specifically disinherit each, any and all persons whomsoever [sic] claiming to be, or who may be lawfully determined to be my heirs at law, except as otherwise mentioned in this Will, and I direct that any claim or contest that may be

---

[1] Probate Code section 11704, subdivision (b), provides: "The personal representative may file papers and otherwise participate in the proceeding as a party to assist the court." All further statutory references are to the Probate Code except as otherwise indicated.

made against the distribution of my estate by any person or persons be repudiated by my Executor, and if any beneficiary or other person shall make or file any contest to or seek to impair or invalidate any of the provisions of this, my Last Will and Testament, or shall conspire with or voluntarily assist anyone attempting to do any of those things, they shall be barred from receiving any bequest or benefit from my estate, direct or indirect, and if they successfully contest or claim, they shall receive the sum of ONE DOLLAR ($1.00) in lieu of any such bequest, benefit or award."

Decedent reportedly died on October 25, 2008.

On November 17, 2008, respondent filed a petition for probate of decedent's will and for letters testamentary.

On December 10, 2008, the probate court appointed respondent as the personal representative of the estate.

On April 1, 2009, objector filed a petition to determine distribution rights under section 11700 et seq. In his petition, he claims he is the only child of decedent and that he is entitled to succeed to decedent's entire estate under the laws of intestate succession. He alleges his mother had a relationship with decedent, resulting in objector's birth in May 1961, and that a court in a 1963 paternity proceeding found decedent to be his father and imposed child support obligations. He also alleges decedent either did not believe objector was his child or had forgotten that he was his child, rendering objector an omitted child under section 21622.[2] Objector's petition prays for an order directing the personal representative to distribute the entire estate to him.

On June 19, 2009, respondent filed an answer in his capacity as executor of the estate stating his opposition to objector's petition. None of the other beneficiaries have appeared in this matter.

On July 15, 2009, respondent filed a petition for an order approving an interim payment of his attorney fees and expenses. The petition relies, in part, on section 11704, subdivision (b), which provides that "The personal representative may file papers and otherwise participate in the proceeding as a party to assist the court." A declaration prepared by respondent's attorney states that $19,774.96 in fees and costs had been incurred to date in relation to the will contest filed by objector.

---

[2] Section 21622 provides: "If, at the time of the execution of all of decedent's testamentary instruments effective at the time of decedent's death, the decedent failed to provide for a living child solely because the decedent believed the child to be dead or was unaware of the birth of the child, the child shall receive a share in the estate equal in value to that which the child would have received if the decedent had died without having executed any testamentary instruments."

On September 25, 2009, objector filed a response and objection to respondent's petition for attorney fees and expenses. In his response, objector asserted that respondent should not receive payment from the estate for the services performed by his attorney because respondent is also a beneficiary and therefore is not an impartial personal representative.

On October 23, 2009, the probate court filed its order granting respondent's petition for an interim payment of attorney fees and expenses. This appeal followed.

## DISCUSSION

### I. *Objector Has Standing to Appeal*

Because objector's right to inherit his father's estate as an omitted heir under section 21622 has yet to be established in the underlying proceeding, we requested supplemental briefing from the parties on the issue of whether he has standing to challenge the order in question. We received briefs from both parties.

■ The issue of whether a party has standing to appeal is a question of law. (*IBM Personal Pension Plan v. City and County of San Francisco* (2005) 131 Cal.App.4th 1291, 1299 [32 Cal.Rptr.3d 656].) "Standing to appeal is 'jurisdictional and therefore cannot be waived.' [Citation.]" (*Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 295 [50 Cal.Rptr.2d 493].) Thus, if a party has no standing to appeal, this court has no jurisdiction to consider the appeal.

■ Code of Civil Procedure section 902 states, "Any party aggrieved may appeal in the cases prescribed in [title 13, Appeals in Civil Actions]." This rule applies to appeals from probate court orders. (See, e.g., *Estate of Goulet* (1995) 10 Cal.4th 1074, 1079, 1081–1082 [43 Cal.Rptr.2d 111, 898 P.2d 425]; *Estate of Colton* (1912) 164 Cal. 1, 5 [127 P. 643]; *Crook v. Contreras* (2002) 95 Cal.App.4th 1194, 1201 [116 Cal.Rptr.2d 319].) The Supreme Court has held: "One is considered 'aggrieved' whose rights or interests are injuriously affected by the judgment [or order]. [Citations.] Appellant's interest ' "must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment [or order]." ' [Citation.]" (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737 [97 Cal.Rptr. 385, 488 P.2d 953]; accord, *United Investors Life Ins. Co. v. Waddell & Reed, Inc.* (2005) 125 Cal.App.4th 1300, 1304 [23 Cal.Rptr.3d 387].)

The controlling principle of law as to the standing of disinherited heirs to appeal an order of the probate court is stated in *Estate of Thor* (1935) 11

Cal.App.2d 37, 37–38 [52 P.2d 966]: "It is well settled that, in view of the admitted fact that since the surviving but disinherited husband occupied the position of a stranger to the estate of his deceased wife, he had no standing in court in the matter either of the settlement of the account of the executor of the will of [decedent], or of the manner in which distribution of her estate should be ordered. [Citations.] [¶] It follows that, having no right to be heard in the matter before the probate court, the surviving husband likewise had no right of appeal from any order that might be made in the premises." (See also *Estate of King* (1953) 121 Cal.App.2d 765, 770 [264 P.2d 586], fn. omitted ["[Appellant] claims that she is a person interested in decedent's estate, for 'she states that she is an heir of the estate.' This assertion is a mere allegation of a conclusion of law and is contrary to the facts which appear in the record. Decedent's second codicil expressly provided that decedent was not making any provision for . . . [appellant] . . . . Therefore she is obviously not a devisee under decedent's will and not interested as such in his estate. She is not entitled to maintain this appeal individually."]; and see *Rousseau v. Raoul-Duval* (1962) 203 Cal.App.2d 589, 590–591 [21 Cal.Rptr. 751] [same].)

In his supplemental brief, objector asserts that he has standing to appeal because, assuming he prevails in the underlying action, the award of attorney fees places him at a financial disadvantage by diminishing the estate. He also notes that under section 10830 he was properly served with notice of respondent's petition and, by implication, was authorized to oppose it in the probate court. We are satisfied with his arguments and conclude he does have standing to appeal from the order he contests.

## II. *Section 11704, Subdivision (b)*

### A. *Standard of Review*

Because objector raises an issue involving statutory interpretation, this appeal presents a question of law that we review de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].)

### B. *Heirship Proceedings*

Section 11704 is part of a statutory scheme creating a procedure for a court to ascertain who is entitled to distribution rights from a decedent's estate.[3] Section 11700 et seq., details the procedures by which interested persons and

---

[3] Section 11700 provides: "At any time after letters are first issued to a general personal representative and before an order for final distribution is made, the personal representative, or any person claiming to be a beneficiary or otherwise entitled to distribution of a share of the

personal representatives may seek to establish who is entitled to a distribution from an estate by filing a petition. Any interested person may appear and oppose such a petition and file a written statement of that person's interest in the estate. (§ 11702, subd. (a).)[4] Section 11704 provides: "(a) The court shall consider as evidence in the proceeding any statement made in a petition filed under Section 11700 and any statement of interest filed under Section 11702. The court shall not hear or consider a petition filed after the time prescribed in Section 11700. [¶] (b) The personal representative may file papers and otherwise participate in the proceeding *as a party to assist the court.*" (Italics added.) Section 11705, subdivision (a) expressly provides that in ruling on such a petition, "The court shall make an order that determines the persons entitled to distribution of the decedent's estate and specifies their shares." When an order for final distribution becomes final, it is "conclusive as to the rights of all interested persons." (§ 11705, subd. (b).)

## C. The Plain Meaning of Section 11704 Does Not Support Objector's Claim

■ Under principles of statutory construction, we first look to the plain meaning of the statutory provisions. "Ordinarily, the words of the statute provide the most reliable indication of legislative intent. [Citation.] However, if the terms of the statute provide no definitive answer, then courts may resort to extrinsic sources, including the objects to be achieved. [Citation.] 'When the statutory language is ambiguous, the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes. [Citations.] " 'Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.' " [Citation.]' [Citation.]" (*County of Santa Clara v. Perry* (1998) 18 Cal.4th 435, 442 [75 Cal.Rptr.2d 738, 956 P.2d 1191].)

estate, may file a petition for a court determination of the persons entitled to distribution of the decedent's estate. The petition shall include a statement of the basis for the petitioner's claim."

[4] Section 11702 reads: "(a) Any interested person may appear and, at or before the time of the hearing, file a written statement of the person's interest in the estate. The written statement may be in support of, or in opposition to, the petition. No other pleadings are necessary and the written statement of each claimant shall be deemed denied by each of the other claimants to the extent the written statements conflict.

"(b) If a person fails timely to file a written statement:

"(1) The case is at issue notwithstanding the failure and the case may proceed on the petition and written statements filed by the time of the hearing, and no further pleadings by other persons are necessary.

"(2) The person may not participate further in the proceeding for determination of persons entitled to distribution, but the person's interest in the estate is not otherwise affected.

"(3) The person is bound by the decision in the proceeding."

Objector contends the "plain and common sense meaning" of the words "participate in the proceeding as a party to assist the court" precludes respondent, in his capacity as the personal representative, from acting as a litigation adversary. Emphasizing that respondent is a beneficiary as well as the executor of decedent's estate, objector further claims section 11704, subdivision (b), prohibits respondent from assuming the entire defense of an heirship petition at the estate's expense. He asserts that under this provision an executor is entitled to participate as a neutral party only, and is not permitted to advance his or her own interests.

Objector also reads the phrase "to assist the court" as a limitation on the scope of the personal representative's participation, noting that all litigants can claim they assist the court by presenting evidence and argument and, therefore, had the Legislature intended to allow a personal representative to participate to the same extent as any other party it would have been unnecessary to include the phrase "to assist the court" in the statute. He further surmises the Legislature intended that the personal representative would participate on rare occasions only, as beneficiaries already have incentive to litigate their own claims. Finally, he asserts that had the Legislature intended to allow personal representatives to defend heirship petitions, it would have stated so explicitly, noting it has done so in section 9820, a statute that gives the personal representative the power to commence and maintain actions for the benefit of the estate as well as the power to defend actions brought against the decedent, the personal representative, or the estate.

Contrary to objector's position, we see nothing in the plain language of this statute to support the conclusion that it "does not allow an executor to assume the entire defense of an heirship petition when there are numerous beneficiaries with a direct financial stake in the matter." Had the Legislature desired to limit the class of personal representatives subject to section 11704, subdivision (b), to those having no interest in the estate as a beneficiary, or to limit the section's application to cases in which there are no other beneficiaries or heirs available to defend a petition, such intent could have been stated explicitly.

In our view, the phrase "to assist the court" means exactly that. In an early case holding that commissioners appointed to serve on commissions formed by statute did not usurp judicial authority where their reports did not become a part of the public record unless approved by a constitutional number of judges, the Supreme Court observed that courts frequently receive assistance, including assistance from adversarial interested parties: "The legislature has provided for the appointment and compensation of these commissioners; they are given no power except to 'assist the court,' under such rules and

regulations as it may adopt, in the performance of its duties. The great burden of the work of this court is that which is necessarily done in sifting the causes to ascertain from the mass of matter brought here in each case the truth and the law bearing upon it, preparatory to the processes of adjudication and judgment. To say that the court cannot be assisted in this preliminary work by men sworn to fidelity, learned in the law, unconnected with and unbiased in the causes, is to deny us unbiased assistance in the very direction in which we are bound to receive it, and *do* receive it, *in every cause that comes before us, from counsel not equally free or likely to give us unprejudiced opinions and statements*; and to deny us such assistance as courts of every grade have been accustomed, time out of mind, to receive, without objection, in this country and in England. It is no more unconstitutional for this court to receive such assistance from commissioners designated by itself, or from amici curiae, *than to accept similar assistance from the statements of fact and arguments of the counsel in the cause.*" (*People v. Hayne* (1890) 83 Cal. 111, 117–118 [23 P. 1], italics added & omitted.)

In other contexts, various persons are authorized to assist a court in arriving at a decision, including subordinate judicial officers acting as fact-finding referees (Code Civ. Proc., § 259, subd. (b)), psychological evaluators who assist the court in determining a dependent minor's placement (see Evid. Code, § 730), and probation officers who provide courts with presentencing reports (Pen. Code, § 1203). Additionally, amici curiae frequently provide supplemental briefing to appellate courts. (See Cal. Rules of Court, rules 8.200(c), 8.520(f).) While these "friends of the court" may not have a direct stake in the cases that they brief, they often have a vested interest in the outcome and often advance adversarial positions. Thus, "assistance" does not ordinarily mandate neutrality. Simply put, there is no basis for concluding that personal representatives who are also beneficiaries are incapable of providing assistance to the court. We also note section 11704, subdivision (b), allows a personal representative to appear "as a party." Parties to litigation are almost always adversarial. Clearly, had the Legislature sought to limit the personal representative's role to that of an unbiased, neutral advisor there would be no need to also designate the representative as a party of record.

We also are not persuaded that the words "to assist the court" are surplusage unless interpreted as a limitation on the scope of a personal representative's participation in an heirship proceeding. That same phrase has been interpreted in other statutory provisions as a means of clarifying that it is the *court* that must make the ultimate decision on a particular issue, not the person who is supplying the assistance: "The purpose of the legislation providing for court assistants in the capacity of 'investigators of domestic relations cases' to 'assist the court in the transaction of the judicial business of said court' [citation] is obviously what the language used implies; i.e., to *assist* the court and not to *replace* it. The Legislature would have no power to

substitute an investigator for a judge." (*Fewel v. Fewel* (1943) 23 Cal.2d 431, 434 [144 P.2d 592] [discussing Code Civ. Proc., former § 261a].)

█ We also note that while respondent is both the personal representative and the largest single beneficiary of the will, 86 percent of the estate is divided among the other beneficiaries, many of whom reside in Germany.[5] It would thus appear that respondent's defense of the heirship petition inures primarily to the benefit of the other beneficiaries who have not appeared in this action and who, if objector ultimately prevails, will not receive any share of the estate. It has also been recognized that an executor "is entitled to advocate in the trial court for an interpretation of the will that preserves and implements the testator's intent, even when a contrary interpretation is asserted by a beneficiary." (*Baker Manock & Jensen v. Superior Court* (2009) 175 Cal.App.4th 1414, 1424 [96 Cal.Rptr.3d 785].) In the present case, decedent's will arguably evidences a specific intent to exclude any unnamed heirs, including objector, from receiving any portion of the estate. Thus, respondent's participation does not appear to be entirely self-serving.[6]

Finally, we disagree with objector's assertion that section 11704, subdivision (b) cannot be read to allow a personal representative to litigate without restriction in an heirship proceeding because section 9820 explicitly grants representatives the power to commence and maintain actions for the "benefit of the estate" and to defend "actions and proceedings against the decedent, the personal representative, or the estate." Citing the canon of statutory interpretation that the expression of one thing is the exclusion of another, he claims the omission of a similarly explicit description of powers in section 11704, subdivision (b), evidences a legislative intent to deprive personal representatives of such powers in heirship proceedings. In our view, the designation of the personal representative as a "party" in section 11704, subdivision (b), necessarily implies the right to advocate either for or against an heirship petition.

## D. *Executor's Duty of Impartiality*

Objector contends an executor's duty of impartiality supports a construction of section 11704, subdivision (b), that would preclude respondent from

---

[5] We need not decide whether our conclusions would be different in a case in which the executor is the sole beneficiary of a will being contested by an omitted heir in an heirship proceeding as those facts are not before us.

[6] We also see nothing in the language of the statute itself to support objector's assertion that a plain reading of the statute indicates the Legislature believed the personal representative would participate in rare circumstances only, as beneficiaries are likely to appear in heirship proceedings to protect their own interests. The statutory language is fairly straightforward and does not imply any indication as to the frequency with which it is likely to be invoked.

assuming the entire defense of the heirship petition. It is true that as the executor of decedent's estate, respondent represents all the heirs and cannot favor one claimant over another. (*Estate of Torrance* (1957) 154 Cal.App.2d 350, 358 [316 P.2d 94].) Again, however, when an heirship petition is presented, an executor is authorized to "file papers and otherwise participate in the proceeding *as a party* to assist the court." (§ 11704, subd. (b), italics added.) This statute gives respondent standing to take a position regarding the merits of a petition.[7]

Objector cites to several cases *predating* the enactment of the precursor to section 11704, subdivision (b), for the proposition that an executor cannot litigate conflicting claims of heirs or legatees at the estate's expense, such as *Estate of Kessler* (1948) 32 Cal.2d 367, 369 [196 P.2d 559], in which the Supreme Court stated that in an heirship proceeding "The beneficiaries must then protect their own rights, and it is not the duty of the executor or administrator to litigate the claims of one against another." As these cases were issued prior to the enactment of the statute, they are not persuasive authority.[8] While we agree executors are generally required to act impartially and to avoid conflicts of interest, we conclude that, under the circumstances of this case, respondent is authorized under this statute to fully participate as a party in this heirship proceeding.[9]

---

[7] We also note decedent's will specifically directs respondent to "repudiate" claims brought against the distribution of the estate.

[8] Indeed, the legislative history supports the conclusion that the 1976 amendment was a reaction to such cases: "Generally, case law does not give public or private administrators or executors standing to participate in the hearing to determine heirship. [¶] This bill would permit the personal representative of an estate to object to petitions for determination of heirship." (Assem. Com. on Judiciary, bill digest prepared for May 3, 1976 hearing on Assem. Bill No. 3559 (1975–1976 Reg. Sess.).)

[9] A leading practice guide describes the personal representative's role in this context: "Even when the issue involves only the interests of others and not the individual interests of the personal representative, the personal representative has a duty to be impartial. For example, with respect to distribution disputes, under prior law [citations] it was generally recognized that executors and administrators could not litigate the conflicting claims of heirs or legatees at the expense of the estate. [Citations.] Under current law, however, this does not mean that the personal representative has a duty to be absolutely silent. See, *e.g.*, [section 11704, subdivision (b)], which allows the personal representative to participate in an heirship proceeding to assist the court and to set forth his or her theory of distribution. The line between impartial assistance to the court and biased advocacy of an interested person's position may not be easy to draw in some cases. [¶] *Particularly when interested parties are unrepresented*, it might be helpful (although not required) for the personal representative to assist the court in its duty to distribute property in accordance with the will." (2 Cal. Trust and Probate Litigation (Cont.Ed.Bar 2010) § 15.3, pp. 487–488, italics added.)

## E. *Legislative History*

While we do not perceive any ambiguity in the statutory language, we accept objector's invitation to examine the legislative history of section 11704, subdivision (b).[10] Objector claims this history shows that the Legislature "intended to limit the personal representative's role in heirship proceedings to cases in which there are no known heirs or legatees at all, primarily in estates administered by the public administrator for relatively impecunious decedents with unknown heirs." Although some references to such situations can be found in this legislative history, the provision does not appear to have been enacted solely for these circumstances.

In 1976, the Legislature added the following language to former section 1081:[11] "Upon prior order of the court, the administrator or executor may file objections to the petition, and participate in the proceedings as a party in order to assist the court in its determination." (Stats. 1976, ch. 620, § 1, p. 1473.) Prior to the 1976 amendment, the prevailing view was that the personal representative generally had no standing to participate in heirship determination proceedings. (Assem. Com. on Judiciary, bill digest prepared for May 3, 1976 hearing on Assem. Bill No. 3559 (1975–1976 Reg. Sess.).) Without such participation, the courts were frequently left to make heirship determinations with only a one-sided presentation of the facts. This situation caused the Los Angeles County Probate Court to urge the amendment of former section 1081 to permit the personal representative to participate in such proceedings. An excerpt from an analysis prepared by the Assembly Judiciary Committee describes the concern: "The proponents indicate that, within the Los Angeles Probate Court System, and elsewhere, commercial heir hunters file petitions in which the personal representative of the estate cannot participate. The proponents assert that often heirship is determined by weak evidence that goes unchallenged."[12] (Assem. Com. on Judiciary, bill digest prepared for May 3, 1976 hearing on Assem. Bill No. 3559 (1975–1976 Reg. Sess.).)

---

[10] In a request for judicial notice filed August 31, 2010, respondent asks that we take judicial notice of the legislative history of section 11704, as well as of a declaration submitted by his expert legislative history analyst. We take notice of the documents reflecting the legislative history of this section, but not of the opinions expressed in his expert's declaration as such opinions are not a proper subject of judicial notice.

[11] As of July 1, 1989, sections 1080 to 1082 were repealed and replaced with sections 11700 to 11705. (Stats. 1988, ch. 1199, §§ 56.5, 91.5, pp. 3906, 3974–3985.) In the most recent revision of the Probate Code, section 11700 was repealed and reenacted without change. (Stats. 1990, ch. 79, §§ 13, 14, p. 463, operative July 1, 1991.)

[12] Objector himself, in the brief he filed below in opposition to respondent's petition for the interim payment of attorney fees, set forth a rationale that is consistent with the Legislature's purpose in enacting section 11704, subdivision (b): "Most [of the named] beneficiaries of this estate are dispersed geographically throughout North America and Europe. Many of them

The Legislature appears to have contemplated that the personal representative might take on an adversarial role in heirship proceedings. The above Assembly Judiciary Committee analysis goes on to state that the proposed amendment would permit a public or private administrator or executor *to object* to such petitions and to participate as a party in proceedings to determine heirship. (Assem. Com. on Judiciary, bill digest prepared for May 3, 1976 hearing on Assem. Bill No. 3559 (1975–1976 Reg. Sess.).) The legislative history thus supports our conclusion that section 11704, subdivision (b), does not limit the personal representative's role to that of a neutral, disinterested participant.

We further note that concerns such as those raised by objector in this appeal appear to have been fully considered by the Legislature. For example, one of the questions raised during deliberations prior to the enactment of the 1976 amendment was: "Under this bill, if a personal representative is improperly motivated, couldn't the personal representative use estate funds to finance proceedings for his [or her] own benefit?" Another question was: "If the role of a personal representative in heirship proceedings becomes an adversary role, would this result in more costs to the estate and further depletion of estate funds?" (Assem. Com. on Judiciary, bill digest prepared for May 3, 1976 hearing on Assem. Bill No. 3559 (1975–1976 Reg. Sess.).)[13] These concerns were ultimately addressed by adding the requirement that the personal representative obtain an order of the court before being allowed to participate in heirship proceedings.[14] As originally introduced, Assembly Bill No. 3559 (1975–1976 Reg. Sess.) did not contain this requirement. (See also

speak no English, or speak it only as a second language, and those that live in Germany live in a legal system where they can rely on the judge to advocate for them and represent their interests. *They are therefore unlikely to know that under the American adversarial legal system they are expected to either advocate for themselves or retain counsel to do so, or be aware of their rights under American law vis-à-vis the estate, the personal representative, or each other.* Because they all also have relatively modest pecuniary interests in the estate—excepting again, the personal representative—they are less likely to retain their own counsel, who could apprise them of their rights." (Italics added.)

[13] Interestingly, the materials presented to the Governor prior to his signing of the bill include letters raising the same issues that are raised by objector in this appeal. For example, a letter from a probate attorney named L. Nelson Hayhurst states: "The proposed amendment if it becomes law, may lead to the anomalous position of a fiduciary and its attorney being paid both compensation and cost at the direct expense of a litigating heir who may prevail 100 per cent in the very litigation in which the fiduciary participates 100 per cent unsuccessfully." (L. Nelson Hayhurst, letter to John J. Miller, Chairman of the Judiciary Committee, Apr. 8, 1976.) Notwithstanding this criticism, the amendment was enacted into law. However, we note letters to various legislators and to the Governor expressing opinions in support of or opposition to a bill are not evidence of the Legislature's collective intent and generally should not be considered. (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062, fn. 5 [48 Cal.Rptr.2d 1, 906 P.2d 1057].)

[14] Section 11704 was added in 1988 (Stats. 1988, ch. 1199, § 91.5, pp. 3974, 3978–3979). The section restated without substantive change portions of former section 1081 (repealed by

Hon. David Eagleson (then Presiding Judge of Los Angeles Probate Court, later Associate Justice of the Cal. Supreme Court), letter to Gov. Brown, Aug. 19, 1976 ["There will be no opportunity for 'churning' the estate for additional fees because the right of the administrator or executor to participate is conditioned upon obtaining a prior order of court and if the court determines it needs no assistance, the order would not be forthcoming."].)

We agree with objector that the 1976 amendment appears to have been intended, at least in part, to ameliorate situations in which decedents died intestate and the public administrator was appointed to probate these estates. (See Attorney General Evelle J. Younger, letter to Governor Jerry Brown, Aug. 19, 1976 [in enrolled (Governor) Materials] [noting that "one-sided presentation[s] of facts by a claimant to a decedent's estate" often occur in cases in which the public administrator is appointed to probate estates].) Yet, a report on the bill submitted to the Governor by his legal affairs department suggested "This bill would allow the estate's administrator or executor (*public or private*) to participate as a party and thereby assist the court in making its determination of heirship. *The goal is to establish a more effective means of detecting false heirs.*" (Italics added; see also letter from State Bar of California, Harold Bradford, Legislative Representative, Aug. 20, 1976 [stating "the participation of the administrator or executor in the proceedings to determine heirship will assist the court in making the proper findings."].) That the legislation is not specifically confined to such cases, however, suggests to us that the Legislature did not intend to limit the application of the amendment to cases involving public administrators. Rather, the stated goal of the legislation was "to establish a more effective means of detecting false heirs," regardless of whether the executor was public or private. (Legal Affairs Sect., Enrolled Bill Rep. on Assem. Bill No. 3559 (1975–1976 Reg. Sess.) Aug. 20, 1976.) There is, in short, insufficient evidence in the legislative history to support objector's claim that the Legislature intended to restrict the personal representative's right to participate in the heirship determination proceeding to those cases in which there are no other interested parties available to oppose the petition.[15]

Stats. 1988, ch. 1199, § 56.5, p. 3906), except that a prior court order is no longer required for participation of the personal representative.

[15] Although we have set out some portions of the legislative history, we remind the parties that "In construing the terms of a statute we resort to the legislative history of the measure only if its terms are ambiguous." (*Title Ins. & Trust Co. v. County of Riverside* (1989) 48 Cal.3d 84, 96 [255 Cal.Rptr. 670, 767 P.2d 1148]; see also *Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) As we have already noted, nothing in the language of section 11704, subdivision (b), limits a personal representative to a purely neutral role in heirship determinations. Nor does the statute limit its application solely to estates administered by the public administrator.

### III. *Public Policy on Award of Attorney Fees*

Objector claims that "fairness and public policy" mandate a construction of section 11704, subdivision (b), that would prevent an executor from assuming the defense of an heirship petition at the estate's expense. He claims the fee order is unfair because it (1) compels him to bear both sides' attorney fees in the event he prevails, (2) discourages settlement "by creating an uneven playing field," and (3) violates the so-called American rule that requires real parties to pay their own litigation costs.

■ The general rule in California is that compensation for the services of an attorney must be paid by the person employing him or her. (See Code Civ. Proc., § 1021 ["Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys . . . is left to the agreement, express or implied, of the parties . . . ."].) This general rule, however, is subject to various exceptions such as the presence of "a special agreement, special statutory provision, or exceptional circumstances." (*Estate of Reade* (1948) 31 Cal.2d 669, 671 [191 P.2d 745] (*Reade*).)

In probate matters, provision is made by statute for payment from the estate of fees to attorneys of personal representatives for "ordinary services." (§ 10810, subd. (a).) In addition, section 10811, subdivision (a), provides, in part: "Subject to the provisions of this part, . . . the court may allow additional compensation for extraordinary services by the attorney for the personal representative in an amount the court determines is just and reason-able." Section 10832 provides that "the court may allow compensation to the personal representative or to the attorney for the personal representative for extraordinary services before final distribution when any of the following requirements is satisfied: [¶] (a) It appears likely that administration of the estate will continue, whether due to litigation or otherwise, for an unusually long time. [¶] (b) Present payment will benefit the estate or the beneficiaries of the estate. [¶] (c) Other good cause is shown." "It has long been settled that the probate court is the proper forum for determining the validity and the reasonableness of extraordinary compensation sought from the estate by an executor or his legal representative." (*Hutchinson v. Gertsch* (1979) 97 Cal.App.3d 605, 613 [159 Cal.Rptr. 40].)

■ The propriety of grants of attorney fees as extraordinary compensa-tion payable by the estate can turn on whether the personal representative is also the primary beneficiary of an estate. In *Estate of Higgins* (1910) 158 Cal. 355 [111 P. 8], the executor, who was also a beneficiary, opposed the contest

of a will that favored the executor over another beneficiary. The court concluded that under such circumstances it would be inequitable to award the executor fees from the estate. The court explained that "To hold otherwise would simply be to enable him by reason of his position as executor to subject the whole estate to such expenses as were incurred by him in litigation defended by him *for his own sole benefit* as a devisee and legatee under the assailed will." (*Id.* at p. 358, italics added; see also *Estate of Pryor* (1942) 51 Cal.App.2d 735, 739 [125 P.2d 511] ["The executrix being substantially benefited and only a part of the devisees being benefited, it was practically a contest between individuals and was not such a contest as under the statutes the executrix was entitled to defend at the cost of the estate."].)

It is true that respondent's opposition to objector's petition does advance his own interests as he is the largest single beneficiary. However, as noted above, decedent's will allocates the vast majority of the estate to others whose interests are presently unrepresented. Under equitable principles, attorney fees can be properly awarded in such circumstances: "For example, a plaintiff who has succeeded in protecting, preserving or increasing a fund for the benefit of himself *and others* may be awarded compensation from the fund for the services of his attorney. This is to compel those for whose benefit the action or proceeding was taken to bear their share of the expenses of the litigation; and this rule is equitable and just." (*Reade, supra,* 31 Cal.2d 669, 671–672, italics added.) At this stage of the proceedings, objector has not established his right to decedent's estate. Respondent is the only person representing the interests of the many beneficiaries who are named in the will and is the sole advocate acting on their behalf. Under these circumstances, we deem it fair that the estate bear the costs of defending the heirship petition. In our view, the unfairness in requiring respondent to finance this defense on his own when so many others stand to benefit from his efforts outweighs any perceived unfairness to objector.

■ The issue of attorney fees and recovery of costs, where the personal representative becomes involved in the probate matter under section 11704, as here, is clearly within the discretion of the probate court. As indicated above, under section 10811, additional compensation for extraordinary services may be allowed by the trial court where it finds the award is just and reasonable. Any fee award is therefore predicated on a case-by-case review after a proper motion is presented stating the claim to the court with sufficient particularity. (*Estate of Fulcher* (1965) 234 Cal.App.2d 710, 717–718 [44 Cal.Rptr. 861]; *Estate of Herbst* (1938) 26 Cal.App.2d 249, 251 [79 P.2d 139].) Our holding today does nothing to change this exercise of judicial discretion.

## DISPOSITION

The order is affirmed.

Marchiano, P. J., and Margulies, J., concurred.

A petition for a rehearing was denied April 11, 2011, and appellant's petition for review by the Supreme Court was denied June 8, 2011, S192755.