Filed 1/19/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| Estate of KIRK KERKORIAN, Deceased. | B283132 |
| | (Los Angeles County Super. Ct. No. BP164011) |
| UNA DAVIS, <br><br> Petitioner and Appellant, <br><br> v. <br><br> ANTHONY MANDEKIC, as Executor, etc., et al., <br><br> Objectors and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Maria E. Stratton, Judge. Affirmed.

Sall Spencer Callas & Krueger, Robert K. Sall, Michael A. Sall; Bentler Mulder, Robin S. Bentler; Deily Law Firm, John P. Deily, James C. Harvey, and Brendan J. Coughlin, for Petitioner and Appellant.

Glaser Weil Fink Howard Avchen & Shapiro, G. Jill Basinger, Elizabeth G. Chilton, and David Zarmi, for Objector and Respondent Anthony Mandekic.

Probate Code section 11704 requires an executor to obtain court permission before taking sides in a proceeding to determine who is entitled to a distribution of estate assets. We are asked to decide whether the probate court complied with the statute's requirements when it allowed the executor of Kirk Kerkorian's (Kerkorian's) estate to oppose a petition filed by Kerkorian's former wife seeking a third of her late husband's assets.

## I. BACKGROUND

Kerkorian executed a will in July 2013 to govern the distribution of his substantial assets upon his death. On March 30, 2014, Kerkorian married petitioner and appellant Una Davis (petitioner).

Two days before the wedding, Kerkorian gave objector and respondent Anthony Mandekic (Mandekic) $10 million with written instructions to give the money to petitioner upon their marriage "as a transfer from [Kerkorian] to [petitioner] outside of [Kerkorian's] estate and . . . in place of any transfer to [petitioner] that [Kerkorian] might make upon [his] death." The day before the wedding, petitioner signed a "Waiver of Marital Rights" (the waiver) in which she relinquished any right to receive assets of Kerkorian's estate through intestate succession, under Kerkorian's will, or as an omitted spouse pursuant to statute. Mandekic then transferred $10 million to petitioner as directed, and petitioner and Kerkorian separated roughly two months later.

Kerkorian died just over a year thereafter, in June 2015. His will was admitted to probate, and Mandekic was qualified to serve as executor of the estate. The July 2013 will is not part of the record on appeal, but it is undisputed the will (1) does not

3

mention petitioner, (2) provides approximately $40 million in specific bequests to several individuals, including Mandekic (whose bequest has already been distributed), and (3) gives the remainder of Kerkorian's estate, valued at approximately $2 billion, to unidentified charitable organizations to be selected by a committee appointed in the will.

Pursuant to Probate Code section 11700,[1] petitioner petitioned the probate court for an order determining her right to a distribution of Kerkorian's estate as an omitted spouse.[2] Petitioner's second amended petition alleges Kerkorian's $10 million gift to her, and her execution of the waiver, did not preclude her from being treated as an omitted spouse because the relevant documents were not signed by both petitioner and Kerkorian, as required; petitioner did not voluntarily sign the waiver; Kerkorian (who was in his 90's at the time) lacked

---

[1]    Undesignated statutory references that follow are to the Probate Code.

[2]    Section 11700 provides that after the court issues letters of administration and before it orders final distribution of an estate, "any person claiming to be a beneficiary or otherwise entitled to distribution of a share of the estate[ ] may file a petition for a court determination of the persons entitled to distribution of the decedent's estate."  A "decedent's surviving spouse who married the decedent after the execution of all of the decedent's testamentary instruments . . . shall receive a share in the decedent's estate" as an "omitted spouse" unless it is shown the decedent intentionally omitted the spouse from the testamentary instruments or the spouse waived a right to participate in the estate.  (§§ 21610, 21611.)  Petitioner contends she is entitled to one-third of Kerkorian's estate as an omitted spouse.

4

capacity and was subject to undue influence; petitioner did not receive adequate disclosure of Kerkorian's property and financial obligations before signing the waiver; and petitioner was not represented by independent legal counsel.

Mandekic sought court approval, pursuant to section 11704, subdivision (b),[3] "to oppose [petitioner's] Omitted Spouse Petition." Mandekic asserted there was good cause to grant such approval because he was "responsible for implementing what he kn[e]w[ ] to be the testamentary wishes of [Kerkorian], . . . there [were] no named charitable beneficiaries available to defend [Kerkorian's] estate plan, . . . [Mandekic] ha[d] no remaining personal interest in the [e]state, and . . . the burden of opposing [petitioner's] petition should not be borne by the people of the [S]tate of California." Mandekic informed the probate court that if he "were directed to refrain from litigating the Omitted Spouse Petition, he would still remain involved in the litigation as a witness, and in his role as the Executor."

The Attorney General, who was deemed to be a person entitled to distribution of Kerkorian's estate for probate purposes (because Kerkorian's will provided for a devise to unidentified charitable beneficiaries), supported Mandekic's request to oppose the omitted spouse petition. The Attorney General reasoned Mandekic was "in a unique position to defend . . . Kerkorian's estate plan, as he [wa]s most familiar with [Kerkorian], his [e]state, and his estate plans."

---

[3] This statute, which we discuss in detail *post*, permits a "personal representative [to] petition the court for authorization to participate, as necessary to assist the court, in [a] proceeding [under section 11700]." (§ 11704, subd. (b)(1).)

Petitioner objected to Mandekic's request to oppose her petition. She contended his participation was unnecessary because the Attorney General was both obligated and able to represent the only interests adverse to her petition—those of the unidentified charitable beneficiaries. Petitioner acknowledged Mandekic could provide relevant witness testimony in the proceeding, but she contended he had not shown good cause to oppose her petition as a litigant because the Attorney General already had a statutory duty to represent the unidentified charities and legislative history materials for section 11704 indicated an executor's participation in heirship proceedings should be "the exception rather than the rule."[4]

The probate court granted Mandekic's request to oppose petitioner's omitted spouse petition. The court reasoned "[t]he legislative history of Probate Code section 11704(b)(2) does not prevent a personal representative from participating in heirship proceedings. It just requires prior court approval, upon a showing of good cause." The court expressly found such good cause existed, giving the following reasons: (1) Mandekic's "familiarity with [Kerkorian's] financial and personal affairs [placed him] in a unique position to best advocate for what [Kerkorian's] intentions were with respect to the omission of [petitioner] from the will"; (2) Mandekic had no financial interest in Kerkorian's estate, having already received a cash distribution not challenged by petitioner; (3) Mandekic was "not otherwise improperly motivated to participate in the proceedings at the

_____

[4]     At petitioner's request, the probate court took judicial notice of legislative committee analyses of the 2013 bill that amended section 11704 to read as it currently does.

6

estate's expense"; (4) it would "waste resources to require . . . Mandekic to educate the Attorney General on the facts underlying this litigation and then have the Attorney General conduct the litigation, all at the expense of either the State of California or the estate"; and (5) allowing Mandekic to participate as a party would "result in a speedier conclusion of the estate proceeding and speedier distribution of assets to the beneficiaries, whomever they may turn out to be." The court additionally believed "[Mandekic]'s participation [would] be helpful in determining the rightful beneficiaries of the estate in accordance with [Kerkorian's] intent."

## II. DISCUSSION

Petitioner contends the probate court misapplied section 11704, subdivision (b) by conducting only part of the analysis it requires. She complains the court allowed Mandekic to oppose her petition based merely on its determination of "good cause," and without evaluating what she sees as a separate showing that must be made under the statute, namely, whether Mandekic's participation as a party was "necessary to assist the court." (§ 11704, subd. (b)(2).) Petitioner also contends that even if the court applied the correct legal standard in finding only good cause, the good cause finding was an abuse of the court's discretion.

Petitioner is wrong on both counts. A probate court's good cause finding necessarily subsumes its determination of the assistance that will be necessary because a court cannot appropriately assess whether good cause exists to allow an executor to participate in an action without some notion of what form that participation will take. Section 11704's use of the word

7

"necessary" must be read in context, and as courts have long recognized, it often carries—as it does here—a meaning more akin to "useful" rather than "indispensable."  The probate court expressly found good cause to permit Mandekic to participate in the action as he proposed, namely, as a litigant opposing petitioner's motion to obtain one-third of Kerkorian's estate, and that good cause determination was well within the court's broad discretion.

> A.    *Statutory Standards Governing an Executor's Participation in Section 11700 Proceedings for Distribution of Estate Assets*

It was once "generally recognized that executors and administrators acting in their representative capacities are indifferent persons as between the real parties in interest and consequently cannot litigate the conflicting claims of heirs or legatees at the expense of the estate."  (*Estate of Kessler* (1948) 32 Cal.2d 367, 369.)  In 1976, however, the Legislature amended former Probate Code section 1081 "to create a narrow exception to the long-standing general rule barring a personal representative from participating in an heirship proceeding." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1160 (2013-2014 Reg. Sess.) as amended June 3, 2013, p. 4 (Sen. Judiciary Com. Analysis).)  Former section 1081 permitted an administrator or executor, "[u]pon prior order of the court," to "file objections to [a] petition [for distribution of estate assets], and [to] participate in the proceedings as a party in order to assist the court in its determination."  (Stats. 1976, ch. 620, § 1.)

The Legislature repealed former section 1081 in 1988. (Stats. 1988, ch. 1199, § 56.5.)  In its place, the Legislature

8

enacted former section 11704, subdivision (b) in 1990, which provided that a "personal representative may file papers and otherwise participate in a proceeding [to determine persons entitled to distribution of estate assets] as a party to assist the court." (Former § 11704, subd. (b), added by Stats. 1990, ch. 79, § 14.) In other words, when it enacted former section 11704, subdivision (b) in the place of former section 1081, the Legislature deleted the court order requirement. The explanation given for the change at the time was that "[t]here is nothing so unique about the determination made in such a proceeding that requires rules that differ from the general rules of civil practice that govern all other probate procedures, or that precludes the court from making the determination." (Recommendation Relating to Distribution and Discharge (Dec. 1987) 19 Cal. Law Revision Com. Rep. (1987) p. 958.)

In 2011, the Court of Appeal decided *Estate of Bartsch* (2011) 193 Cal.App.4th 885 (*Bartsch*), in which a decedent's executor—who was also an heir to the decedent's estate—opposed a petition by the decedent's son to be treated as an omitted child. The *Bartsch* court acknowledged the general rule requiring impartiality by personal representatives but concluded the plain language of former section 11704 (as enacted in 1990 following the repeal of former section 1081) did not require impartiality. (*Id*. at p. 896.) The court held the statute "necessarily implie[d] the right [of a personal representative] to advocate either for or against an heirship petition." (*Id*. at p. 895.) Based on its conclusion former section 11704 entitled the executor to litigate against the son, the *Bartsch* court upheld an interim award of attorney fees and costs incurred by the executor in opposing the son's petition. (*Id*. at pp. 888, 901.)

9

In 2013, the Legislature amended former section 11704, subdivision (b) to reinstate the court order requirement.[5] The statute now provides, in pertinent part:

"(b)(1) The personal representative may petition the court for authorization to participate, as necessary to assist the court, in [a] proceeding [for a determination of persons entitled to distribution of estate assets]. . . . [¶] (2) The court may grant or deny this petition, in whole or in part, on the pleadings, without an evidentiary hearing or further discovery. A petition filed pursuant to this subdivision may be granted only upon a showing of good cause. The court shall determine the manner and capacity in which the personal representative may provide assistance in the proceeding. The court may direct the personal representative to file papers as a party to the proceeding, or to take other specified action, if deemed by the court to be necessary to assist the court." (§ 11704, subd. (b) [as amended by Stats. 2013, ch. 84, § 1].)

### B. Standard of Review

As petitioner acknowledges, we review the probate court's good cause finding under section 11704, subdivision (b) for abuse of discretion. (See *Laboratory Specialists Internat., Inc. v. Shimadzu Scientific Instruments, Inc.* (2017) 17 Cal.App.5th 755, 763 ["deferential good cause standard commits the applicable

---

[5] Legislative history materials indicate the proposed changes were made in reaction to the *Bartsch* decision. (See, e.g., Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1160 (2013-2014 Reg. Sess.) as amended Mar. 20, 2013, p. 2 (Assem. Judiciary Com. Analysis); Sen. Judiciary Com. Analysis, *supra*, at p. 5.)

decision "'almost entirely in the discretion of the court below, and appellate tribunals will rarely interfere, and never unless it clearly appears that there has been a plain abuse of discretion'"]; *Laraway v. Sutro & Co.* (2002) 96 Cal.App.4th 266, 273 (*Laraway*) ["[d]eterminations of good cause are generally matters within the trial court's discretion"]; cf. *Department of Corporations v. Superior Court* (2007) 153 Cal.App.4th 916, 933 [determination whether act is "'necessary or appropriate'" depends on "discretionary application" of decision-maker's "judgment and expertise"].)

The scope of a court's discretion is "derived from the common law or statutes under which discretion is conferred." (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1298 (*Drew*); see also *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 [discretion "must be exercised within the confines of the applicable legal principles"].) We consider "whether the grounds given by the court for its [decision] are consistent with the substantive law of section [11704] and, if so, whether their application to the facts of this case is within the range of discretion conferred upon trial courts under section [11704], read in light of the purposes and policy of the statute." (*Drew, supra,* at p. 1298.)

Insofar as our review requires us to interpret section 11704, we do so de novo, "seeking, as always, to ascertain the Legislature's intent so as to give effect to the law's purpose. [Citation.] We begin with the statute's plain language, as the words the Legislature chose to enact are the most reliable indicator of its intent," and we turn to other sources for assistance, including legislative history, only if the text fails to clearly manifest the Legislature's purpose. (*In re Corrine W.*

(2009) 45 Cal.4th 522, 529; see also *John v. Superior Court* (2016) 63 Cal.4th 91, 95-96.)

> C.   *The Probate Court Did Not Abuse Its Discretion in Granting Mandekic's Request to Oppose the Omitted Spouse Petition*
> 1.   *The court applied the correct legal standard: good cause*

Petitioner's primary contention is that the probate court "abused its discretion as a matter of law by applying the wrong legal standard." The contention fails because it is premised on an incorrect understanding of what section 11704, subdivision (b) requires.

The process described in section 11704, subdivision (b) provides an executor with the opportunity, at the outset, to identify for the probate court the manner in which he or she proposes to participate in probate proceedings. Specifically, the statute provides that an executor (i.e., a "personal representative") may "petition the court for authorization to participate, as necessary to assist the court, in [a] proceeding [commenced under section 11700]." (§ 11704, subd. (b)(1).) Mandekic availed himself of that opportunity when filing his section 11704 petition, informing the court he believed he should be authorized to oppose petitioner's omitted spouse petition as a litigant.

The Legislature sensibly provided executors with this opportunity at the outset because section 11704, subdivision (b) states "[a] petition filed pursuant to this subdivision may be granted only upon a showing of good cause." (§ 11704, subd. (b)(2).) Both conceptually and practically, a court cannot

12

evaluate whether good cause exists to grant a petition to participate in probate proceedings without an understanding of what form the executor's participation will take.  What might constitute good cause for one type of participation, for instance, might not constitute good cause to participate in a different manner, e.g., by "fil[ing] papers as a party to the proceeding." (§ 11704, subd. (b)(2).)  The text of section 11704, subdivision (b) recognizes this interdependence, i.e., that a good cause finding incorporates a contemplated level of necessary assistance, by obligating courts to "determine the manner and capacity in which the personal representative may provide assistance in the proceeding" (§ 11704, subd. (b)(2)) when finding good cause exists.

In its order granting Mandekic's petition to oppose petitioner's requested relief in the probate proceedings, the probate court did not include language expressly deeming such opposition "necessary to assist the court" (§ 11704, subd. (b)(2)). Petitioner believes this is an indication the court allowed Mandekic to file papers as a party to the proceeding regardless of whether that level of participation was "necessary," but petitioner is doubly mistaken.

First, for reasons just described, an express statement of necessity was unnecessary because the court expressly made a finding of good cause to grant Mandekic's section 11704 petition. In that petition, Mandekic asked to participate in the proceedings as a party opponent, and the probate court's order found good cause on the understanding that would be the form of Mandekic's

13

participation.[6] The court was not obligated to make any further express finding for purposes of spelling out the linkage between its good cause finding and its determination of the "manner and capacity in which [Mandekic] may provide assistance in the proceeding," i.e., the participation necessary to assist the court. (§ 11704, subd. (b)(2); see also *In re Julian R.* (2009) 47 Cal.4th 487, 498-499; *Peake v. Underwood* (2014) 227 Cal.App.4th 428, 447 ["Absent an indication to the contrary, we are required to presume a court was aware of, and followed, the applicable law and considered all the relevant facts and arguments"].)

Second, petitioner's argument fails even on its own terms because courts have long recognized a legislative body's use of the word "necessary" must be understood in context. (*Armour & Co. v. Wantock* (1944) 323 U.S. 126, 129-130 [rejecting argument that

---

[6] Contrary to petitioner's suggestion that the probate court did not "consider[ ] whether any lesser degree of participation by [Mandekic] was appropriate," the record demonstrates the court was well aware of its discretion to allow Mandekic to participate in a lesser capacity than as a party. At the hearing on Mandekic's request to participate as a party, petitioner stated section 11704 gave the court "the ability to define the level of involvement of the executor" in her omitted spouse proceeding, to which the court responded, "[t]hat's what I'm asking you to do for me." Petitioner argued Mandekic "should be limited to providing forthright testimony," and the court asked Mandekic why he should not be restricted to participating solely "as a witness." Mandekic responded he was in the best position to "protect Mr. Kerkorian's testamentary intentions," the cost of enforcing Kerkorian's wishes should be borne by his estate rather than the public, and it would be less efficient for the Attorney General to litigate the matter.

14

"would give an unwarranted rigidity to the application of the word 'necessary,' which has always been recognized as a word to be harmonized with its context"]; *San Francisco Fire Fighters Local 798 v. City and County of San Francisco* (2006) 38 Cal.4th 653, 671-672 (*Fire Fighters*); *People v. Belous* (1969) 71 Cal.2d 954, 961 [citing *Westphal v. Westphal* (1932) 122 Cal.App. 379 for the proposition that "[t]he courts have recognized that "'necessary" has not a fixed meaning, but is flexible and relative"'].)  This has been clear from even the earliest days of the republic, as Justice John Marshall observed in *McCulloch v. Maryland* (1819) 17 U.S. 316:  "Does ['necessary'] always import an absolute physical necessity, so strong, that one thing to which another may be termed necessary, cannot exist without that other?  We think it does not.  If reference be had to its use, in the common affairs of the world, or in approved authors, we find that it frequently imports no more than that one thing is convenient, or useful, or essential to another."  (*Id.* at p. 413; accord, *Fire Fighters, supra,* at p. 674.)

The context surrounding section 11704, subdivision (b)'s use of the word "necessary" leaves us convinced the Legislature used it in its "useful" or "appropriate" sense, and not as a freestanding requirement satisfied only by a showing of indispensability.  In each instance the statute employs the word, it does so in terms that tie the requisite necessity to the probate court's own judgment:  "The personal representative may petition the court for authorization to participate, *as necessary to assist the court,* in the proceeding. . . . [¶]  The court may direct the personal representative to file papers as a party to the proceeding, or to take other specified action, *if deemed by the court to be necessary to assist the court*."  (§ 11704, subd. (b)(1), (2)

15

(emphasis added).)  Other language in the statute reinforces the same point, that necessity is measured by what the court believes would be of assistance.  (§ 11704, subd. (b)(2) ["The court shall determine the manner and capacity in which the personal representative may provide assistance in the proceeding"].)  By committing the determination of what assistance is necessary to the court that will be the recipient of that assistance, we believe the Legislature intended to give probate judges wide latitude in deciding the assistance they believe to be necessary in a given proceeding.  That latitude is a positive grant of discretion and entirely inconsistent with petitioner's understanding of the meaning of "necessary," one that would operate instead as a restrictive constraint on probate court discretion.  In other words, once a probate court finds good cause based on a contemplated level of participation in the proceedings, the "necessary to assist the court" language in the statute requires no more and is thereby satisfied.

The probate court here found good cause, and in doing so it accordingly applied the correct legal standard in evaluating Mandekic's section 11704 petition.

> 2.  *The good cause determination was not an abuse of discretion on this record*

Petitioner maintains that even if the probate court did not abuse its discretion by applying the wrong legal standard, it still abused its discretion by relying on considerations insufficient to constitute good cause.  We hold to the contrary.   Considering both general decisional authority and the statute's legislative history, the probate court's good cause finding did not exceed the bounds of reason.  (*Goodman v. Lozano* (2010) 47 Cal.4th 1327,

16

1339 [" " "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason" " "]; see also *City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 92 [relying on legislative history and case law to support the court's interpretation of "good cause," which was "otherwise clear from the statutory language"].)

Section 11704 does not define "good cause," nor does any case law address its meaning as used in that statute. But good cause as a standard "is relative and depends on all the circumstances." (*Laraway, supra*, 96 Cal.App.4th at p. 274; see also *ibid*. ["[i]n determining the meaning of 'good cause' in a particular context, the courts utilize common sense based upon the totality of the circumstances," which "include[s] the purpose of the statutory scheme"].) A determination of good cause "'should not be enshrined in legal formulism; [rather,] it calls for a factual exposition of a reasonable ground for the sought order.'" (*People v. Accredited Surety Casualty Co.* (2014) 230 Cal.App.4th 548, 559 (*Accredited Surety*), quoting *Waters v. Superior Court* (1962) 58 Cal.2d 885, 893.) "As a general rule, . . . 'good cause' includes reasons that are fair, honest, in good faith, not trivial, arbitrary, capricious, or pretextual, and reasonably related to legitimate needs, goals, and purposes." (*Laraway, supra*, at p. 274.)

Here, the totality of the probate court's reasons underlying its good cause determination, read in context of section 11704's purpose, manifests no abuse of discretion. Mandekic's unusually high degree of personal familiarity with the matters relevant to

17

petitioner's proceeding,[7] combined with his lack of self-interest in the distribution of the estate, supports the probate court's determination good cause was shown.[8]  Indeed, these considerations provide solid grounds for the probate court's belief that Mandekic's participation as a party would facilitate "a speedier conclusion of [petitioner's] estate proceeding and speedier distribution of assets to the beneficiaries"—and a quicker resolution of the proceedings furthers important public policy goals in probate cases.  (*Estate of Heller* (1992) 7 Cal.App.4th 862, 867 [describing particular Probate Code statute as "reflect[ing] strong public policy in favor of the prompt closing and distribution of estates"]; *Estate of Taylor* (1967) 66 Cal.2d 855, 858 ["established policy favor[s] prompt distribution of estates"].)

---

[7]     Mandekic had worked with Kerkorian for more than 40 years.

[8]     Self-interest appears to have been the Legislature's foremost concern with allowing representatives to participate in proceedings to determine distribution of estate assets.  (See, e.g., Sen. Judiciary Com. Analysis, *supra*, at pp. 2, 5 [former section 1081 "allowed the court to determine whether the personal representative was requesting to participate in the proceeding as an impartial party or whether the personal representative desired to participate to protect his or her own interests in the estate"; reinstating former section 1081's court order requirement would "arguably restore fairness to the distribution proceeding by allowing the interested parties the ability to challenge a self-interested personal representative's participation in the proceeding prior to the court's order"].)

Petitioner nevertheless protests that permitting participation predicated on an executor's mere familiarity with the decedent's testamentary wishes will result in "the exception swallowing the rule" against executor participation. But nothing in the statute's text or legislative history suggests an executor's personal knowledge is irrelevant to good cause, and there is no reason to think that what the probate court reasonably characterized as Mandekic's "unique" position in this case (given the unusual size of the estate and the extent of Mandekic's familiarity with Kerkorian's personal and financial affairs) will invariably be true for other executors whenever the Attorney General is called to represent the interests of unidentified charitable beneficiaries.[9]

The probate court's reasons for finding good cause are also "reasonably related to legitimate needs, goals, and purposes" (*Laraway*, *supra*, 96 Cal.App.4th at p. 274). It is true, as petitioner asserts, that legislative committees contemplated section 11704, as now amended, would allow executors to

---

[9]     Petitioner's contention that the probate court's order allows the Attorney General to "delegate its statutory obligations" to Mandekic in contravention of section 11703 is unconvincing. Section 11703 gives the Attorney General a right, but not necessarily the sole obligation, to represent the interests of undesignated charitable beneficiaries. (§ 11703 ["The Attorney General shall be deemed to be *a* person entitled to distribution of the estate . . ."], emphasis added.) Furthermore, the Attorney General did not express an intention to remove himself entirely from the proceedings in this case. Rather, he indicated a desire that Mandekic assume the "primary" role with his office remaining involved and "step[ping] in," if necessary.

participate in proceedings on behalf of beneficiaries unable to represent their own interests.  (See, e.g., Sen. Judiciary Com. Analysis, *supra*, at pp. 5-6 [as amended, section 11704 would enable executors, with the court's permission, to challenge a petition for distribution of estate assets on behalf of beneficiaries unable to protect their own interests on account of "distance, unfamiliarity with the California court system, or the financial inability to litigate the matter"].)  But nothing in the text of the statute or the legislative materials presented suffices to demonstrate a legislative intent to limit "good cause" to only those circumstances.  (See *People v. Cruz* (1996) 13 Cal.4th 764, 784 [where there was no indication the Legislature considered a statutory interpretation proposed by the appellant, the reviewing court "expressed reluctance to draw conclusions concerning legislative intent from legislative silence or inaction"].)  To the contrary, the very implementation of a flexible "good cause" standard implies the Legislature desired courts to have substantial leeway to determine when an executor's participation would be appropriate.  (Cf. Sen. Judiciary Com. Analysis, *supra*, at p. 4 [statute not intended to "prohibit or impede personal representative participation in heirship proceedings where—and to the extent that—such participation is necessary, beneficial, and actually does 'assist the court,'" but rather "provides the court with the authority and discretion to decide how and under what circumstances assistance to the court can and should be provided by the personal representative, while still protecting the estate"].)

Petitioner's argument that allowing estate funds to be used in favor of one beneficiary over another violates the purpose of section 11704 is also unfounded.  Legislative committees considering the bill that most recently amended section 11704

20

were particularly troubled with the prospect of an executor using estate funds for his or her own personal benefit. (See, e.g., Sen. Judiciary Com. Analysis, *supra*, at p. 5 [statute intended to keep "personal representative[s] [from] participat[ing] for sole personal gain at the expense of other beneficiaries of the estate"]; Assem. Judiciary Com. Analysis, *supra*, at p. 1 [statute intended to "eliminate[ ] the unfair advantage now afforded to improperly motivated personal representatives who [under former section 11704] can use estate funds to finance proceedings for their own benefit"]; see also fn. 8, *ante*.) That, of course, is not the situation here because Mandekic has already received, without objection, his limited bequest under Kerkorian's will.[10]

While the legislative history materials also show concern about giving "an unfair advantage" to one beneficiary over another, that concern is expressed in the context of discussing self-interested personal representatives. (See, e.g., Assem. Judiciary Com. Analysis, *supra*, at p. 2 [describing *Bartsch* as allowing "a personal representative, who was also a beneficiary of

---

[10]   The probate court also considered whether Mandekic's participation, though not in his financial self-interest, was an otherwise "improperly motivated" attempt to "abus[e] the system" (Sen. Judiciary Com. Analysis, *supra*, at p. 5). The probate court found there was no such improper motivation in this case, and that finding is supported by the record. (See *Accredited Surety*, *supra*, 230 Cal.App.4th at pp. 555, 560 & fn. 9 [a party's "good faith" is an element of a "good cause" determination that requires a "factual inquiry," and "when there are factual disputes, the trial court's findings of fact will be upheld under the abuse of discretion standard when those findings are supported by substantial evidence"].)

21

the will, to participate as a party . . . with the estate bearing the personal representative's costs" and stating the bill author's view that that rule "gives a personal representative who is also a beneficiary of the estate an unfair advantage over the other beneficiaries because the personal representative will be able to litigate for his or her own benefit, with the estate picking up the tab and depleting funds available for the other beneficiaries"].) The fact that section 11704 was expressly intended to allow executors to represent the interests of non-appearing beneficiaries—which would occur at the expense of the estate—shows the Legislature understood the statute would allow estate funds to be used, at least in some cases, to promote the interests of one beneficiary over another.

Section 11704, in other words, does not mandate neutrality or prohibit an executor from advocating in favor of one beneficiary over another. Rather, it entrusts probate courts with policing whether and to what extent participation in probate proceedings should be permitted in light of the dangers of self-interested involvement and other factors relevant to good cause. The probate court properly discharged this statutory responsibility in permitting Mandekic to oppose the omitted spouse petition in this case.

DISPOSITION

The order granting Mandekic's petition is affirmed, and Mandekic is entitled to recover his costs on appeal.

**CERTIFIED FOR PUBLICATION**

BAKER, J.

We concur:

KRIEGLER, Acting P.J.

RAPHAEL, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.