Filed 10/23/17; partial pub. and mod. order 11/21/17 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LABORATORY SPECIALISTS INTERNATIONAL, INC., | G054056 |
| Plaintiff and Appellant, | (Super. Ct. No. 30-2015-00812029) |
| v. | O P I N I O N |
| SHIMADZU SCIENTIFIC INSTRUMENTS, INC., | |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Frederick Aguirre, Judge.  Affirmed.

Walton & Walton, L. Richard Walton and Masai D. McDougall for Plaintiff and Appellant.

Murchinison & Cumming, William T. DelHagen and Darin W. Flagg; and Melissa Norman Bork for Defendant and Respondent.

\*          \*          \*

Laboratory Specialists International, Inc. (LSI) appeals from the trial court's order dismissing its lawsuit against Shimadzu Scientific Instruments, Inc. (Shimadzu) under the forum selection clause in the parties' contract. An order granting a motion to stay or dismiss on improper fourm grounds is immediately appealable. (Code Civ. Proc., § 904.1, subd. (a)(3); all further statutory references are to this code.) LSI contends Shimadzu committed a fatal procedural misstep by requesting a dismissal *in* its demurrer dismissal based on the forum selection clause, rather than by a separate motion, and that the trial court erred by granting Shimadzu leave to recast its request for dismissal in a separate motion. In the alternative, LSI contends the court erred by: (1) dismissing LSI's tort claims, which LSI argues did not arise out of or "pertain[]" to the parties' contract; (2) finding the forum selection clause mandated Maryland as the proper fourm, rather than conducting an analysis under discretionary forum *non conveniens* factors; and (3) dismissing rather than staying LSI's lawsuit. As we explain, these contentions are without merit, and we therefore affirm the court's dismissal order.

I

FACTUAL AND PROCEDURAL BACKGROUND

LSI filed a complaint in Orange County Superior Court alleging causes of action against Shimadzu for breach of contract, conversion, breach of the implied covenant of good faith and fair dealing, intentional interference with contractual relations, and intentional and negligent interference with prospective economic relations. LSI also named UB Laboratories (UBL) as a defendant in breach of contract and conversion causes of action. The complaint explained that Shimadzu "manufactures devices for measuring highly sensitive biological and chemical materials, toxicology analyzers, and other medical equipment," LSI is "in the business of distributing and re-selling" such equipment, and UBL "is a full service reference laboratory offering toxicology and other testing services to its customers."

According to the complaint, LSI entered a Sales Agreement with Shimadzu to purchase a device known as the LCMS 8040, and LSI then entered a separate contract in which UBL agreed to lease the LCMS 8040 device from LSI. LSI alleged Shimadzu later caused or induced UBL to breach the rental agreement by disclosing to UBL information that was confidential under the terms of the LSI-Shimadzu purchase agreement, including "confidential pricing information . . . related to the purchase of the LCMS 8040 as well as other items LSI sold to UBL." As a result of Shimadzu's disclosure and UBL's breach of the rental agreement, LSI alleged it had "lost the value of the Rental Agreement" and "lost the value of renting a second LCMS 8040 or other similar equipment to UBL."

Specifically, LSI asserted "[t]his unauthorized and contractually prohibited disclosure induced Defendant UBL . . . to stop making the rental payments due to LSI under the Rental Agreement," while still retaining the LCMS 8040 device. LSI also alleged the disclosure induced UBL "to not enter a second rental agreement with LSI" and generally that Shimadzu's "disclosure of confidential information was in direct contravention of the confidentiality clause contained in the sales agreement between LSI and Shimadzu." The complaint alleged the LSI-Shimadzu purchase agreement "requires both parties to keep information received from the other confidential, and states that '[e]xcept as required by law, neither party shall use (except for purposes connected with the performance of its obligations hereunder), divulge or communicate to any third party any information of the other it reasonably knows to be confidential."

Shimadzu demurred to the complaint, asserting LSI's claims "must be dismissed because only the courts of Howard County, Maryland have jurisdiction over this case pursuant to a forum selection clause agreed to by LSI. In addition, Maryland law applies to all of LSI's claims against Shimadzu." Shimadzu also demurred on grounds LSI failed to state causes of action for breach of contract, conversion, negligent interference with prospective economic relations, and that neither the negligent

3

interference nor breach of the implied covenant of good faith and fair dealing were recognized under Maryland law.

After LSI filed an opposition to the demurrer and Shimadzu a reply, the trial court continued the hearing on the demurrer for about six weeks. The court explained in a minute order that Shimadzu "cannot challenge forum by demurrer," citing *Miller-Leigh LLC v. Henson* (2007) 152 Cal.App.4th 1143 (*Miller-Leigh*), and that, with the continuance, Shimadzu "will have an opportunity to bring a motion to dismiss or stay the action under CCP § 410.30" concerning the forum.

Shimadzu filed its motion seeking dismissal of the action for improper forum, LSI opposed the motion and, after an unreported hearing, the trial court granted Shimadzu's motion. The court explained in a minute order that "[t]he forum selection clause at issue is mandatory, and it encompasses all the claims asserted against [Shimadzu]. . . . [¶] When a forum selection clause is mandatory, the traditional forum non conveniens analysis does not apply. Rather, the only inquiry is whether enforcement of the clause would be unreasonable. [Citations.] [¶] Plaintiff has not met this burden. It argues that factors . . . such as the location of evidence or witness[es] . . . favor California over Maryland. However, the inquiry here is whether enforcement of the clause would be <u>unreasonable</u>; the traditional forum non conveniens analysis does not apply. Plaintiff has not shown that the Maryland courts would be unavailable or unable to accomplish substantial justice." In granting the motion, the court ruled that Shimadzu's demurrer was moot.

Shimadzu sought attorney fees as the prevailing party, filed a Proposed Judgment on Order of Dismissal of Plaintiff's Complaint, to which LSI offered no objection, and LSI now appeals.

4

II

DISCUSSION

A.      *Shimadzu Did Not Forfeit Its Forum Challenge*

LSI contends that by including a request for dismissal on forum selection grounds in its demurrer, rather than by a separate motion, Shimadzu forfeited its forum selection argument.  LSI relies on section 418.10, subdivision (e)(3) (hereafter, § 418.10(e)(3)), which states:  "Failure to make a motion under this section at the time of filing a demurrer or motion to strike constitutes a waiver of the issues of lack of personal jurisdiction, inadequacy of process, inadequacy of service of process, *inconvenient forum*, and delay in prosecution."  (Italics added.)  LSI argues this language plainly contemplates a separate motion rather than a request incorporated in a demurrer.

More generally, section 418.10 authorizes a special appearance to quash a summons for lack of jurisdiction or to stay or dismiss an action based on inconvenient forum or other grounds.  As pertinent here, the statute provides that a defendant, "on or before the last day of his or her time to plead or within any further time that the court may for good cause allow, may serve and file a notice of motion for one or more of the following purposes:  [¶] . . . [¶]  (2)  To stay or dismiss the action on the ground of inconvenient forum."  (§ 418.10, subd. (a).)

LSI correctly suggests a separate motion aids the trial court in addressing a potentially dispositive forum issue before reaching the merits of a demurrer, thereby conserving scarce judicial resources.  As LSI puts it, "Filing a demurrer *before* filing a forum *non conveniens* motion consumes California judicial resources in a facial challenge to the validity of the complaint — and gives the defendant two bites at the judicial apple.  If it does not prevail . . . by challenging the complaint itself [by demurrer], the unhappy defendant can thereafter forum shop and seek to take the action somewhere else."

5

For its part, Shimadzu invokes a different statute aimed at determining the proper forum. Section 410.30 provides: "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just." (§ 410.30, subd. (a).) In particular, Shimadzu relies on section 410.30, subdivision (b), which states: "The provisions of Section 418.10 do not apply to a motion to stay or dismiss the action by a defendant who has made a general appearance." Shimadzu interprets this language and the existence of two separate forum statutes to mean that a defendant who does not raise the issue at the outset in a special appearance under section 418.10 nevertheless may do so anytime under section 410.30, even *after* filing a demurrer. Because Shimadzu raised its forum challenge at the time of filing its demurrer, we need not consider whether a party may do so subsequent to a demurrer as Shimadzu asserts.

The trial court reasonably could conclude Shimadzu did not run afoul of section 418.10(e)(3)'s forfeiture provision. Although the statute phrases the "[f]ailure to make a motion under this section at the time of filing a demurrer" as a "*waiver* of the issue[] of . . . inconvenient forum" (§ 418.10(e)(3), italics added), a true "waiver" requires more than a mere failure to act, but rather an *express* relinquishment of a known right. Accordingly, "the correct term is 'forfeiture' rather than 'waiver,' because the former term refers to a failure to object or to invoke a right, whereas the latter term conveys an express relinquishment of a right or privilege. [Citations.]" (*In re Sheena K.* (2007) 40 Cal.4th 875, 880, fn. 1 [noting "the two terms on occasion have been used interchangeably"].) Here, there was no forfeiture because Shimadzu did not "at the time of filing a demurrer" (§ 418.10(e)(3)) fail to object or fail to invoke its right to object to the case proceeding in California. To the contrary, Shimadzu expressly raised the forum issue — the opposite of forfeiting it — and timely did so "at the time" of its demurrer, rather than subsequently as prohibited by section 418.10(e)(3)'s waiver language.

6

True, Shimadzu did not initially file a separate motion as LSI insists is necessary. Shimadzu instead incorporated its forum challenge in a demurrer, but that is not fatal as LSI asserts. As the appellate court in *Miller-Leigh, supra,* 152 Cal.App.4th 1143, explained a trial court may *not* sustain a demurrer based on a forum selection clause because, while demurrer lies where "[t]he court has no jurisdiction of the subject of the cause of action" pled in the complaint (§ 430.10, subd. (a)), "issues relating to a forum selection clause are distinct from the questions of subject matter jurisdiction." (*Miller-Leigh*, at p. 1149.) A forum selection clause "does not mean that another forum lacks jurisdiction," rather, such clauses permit the court "'to *decline* to exercise jurisdiction in recognition of the parties' free and voluntary choice of a different forum.'" (*Ibid.*; original italics.) In contrast to a lack of subject matter jurisdiction, a forum selection clause poses the issue of whether "enforcement of the choice of forum clause would be unreasonable under the facts of the case." (*Id.* at p. 1150.)

In *Miller-Leigh*, the trial court sustained the defendants' demurrer premised on a forum selection clause, requiring reversal. (*Miller-Leigh*, *supra*, 152 Cal.App.4th at p. 1150.) As the reviewing court explained, "The [trial] court did not mention either of the inconvenient forum statutes in making its ruling, nor did it consider any issues relating to the reasonableness of enforcing the parties' choice of forum provisions . . . . Instead, the court sustained defendants' demurrer for lack of subject matter jurisdiction, explicitly citing section 430.10, subdivision (a), as authority for its decision. That ruling was erroneous." (*Miller-Leigh*, at p. 1150.) Instead, *Miller-Leigh* observed that when the defendants presented the trial court with a demurrer asserting a forum selection clause, the court "could have considered this matter on its own motion as authorized by section 410.30, subdivision (a)." (*Miller-Leigh*, at p. 1150.)

That is what the trial court did here, and we discern no error. Relying on section 418.10(e)(3), LSI claims a separate motion challenging the forum was necessary "at the time" Shimadzu filed its demurrer, on pain of forfeiture. But the trial court

7

reasonably could conclude Shimadzu substantially complied with section 418.10(e)(3)'s motion requirement. A "motion" is nothing more than "[a]n application for an order" (§ 1003), and section 418.10(e)(3) does not state a separate motion is required in raising a forum issue. The trial court reasonably could view Shimadzu's invocation of the forum selection clause as an "application for an order" enforcing the clause, while Shimadzu simultaneously demurred to the complaint on grounds including failure to state facts constituting a cause of action under Maryland or California law (§ 430.10, subd. (e)). Indeed, section 418.10, subdivision (e), provides: "A defendant or cross-defendant may make a motion under this section *and simultaneously* answer, demur, or move to strike the complaint or cross-complaint." (Italics added.) While separate documents comprising a party's motion and demurrer may be convenient, trial courts are fully capable — and expressly authorized by statute — to discern and reach forum issues sua sponte.

Thus, section 410.30, subdivision (a), expressly authorizes the trial court to raise and address forum issues on its own motion. Although section 418.10 provides a basis *for parties* to file preanswer forum challenges, that does not mean the court may not also consider such challenges under section 410.30, which invests the court with independent discretion to consider the proper forum and does not limit that discretion to the postanswer period. Timely alerted to the forum issue *in* Shimadzu's demurrer, the trial court acted within its authority under section 410.30, subdivision (a), in providing Shimadzu the opportunity to file a separate motion so both parties could brief the forum issue. In essence, the court simply had Shimadzu recast a portion of its demurrer explicitly in the form of a motion rather than captioned as a demurrer. Nothing prevented the court from doing so. (*Miller-Leigh*, *supra*, 152 Cal.App.4th at p. 1150.)

The trial court's broad authority over the timing of a forum motion in the preanswer period bolsters our conclusion. Section 418.10, subdivision (a), expressly provides that the motion may be filed "on or before the last day of [the defendant's] time

8

to plead *or within any further time that the court may for good cause allow*." (Italics added.) Whether "good cause" exists to allow a party "further time" to file a motion challenging the forum under section 418.10, subdivision (a), is necessarily committed to the trial court's sound discretion. While no cases address good cause in the context of the timing of a forum challenge, the deferential good cause standard commits the applicable decision "'almost entirely in the discretion of the court below, and appellate tribunals will rarely interfere, and never unless it clearly appears that there has been a plain abuse of discretion.'" (*City of Ontario v. Superior Court* (1970) 2 Cal.3d 335, 347.) Shimadzu had argued in its memorandum in support of demurrer that the forum selection clause was mandatory and enforcing it was reasonable, so Shimadzu gained no advantage when the trial court ordered Shimadzu to file the separate motion. Accordingly, the trial court properly could postpone the hearing on Shimadzu's demurrer to allow Shimadzu "an opportunity to bring a motion to dismiss or stay the action under CCP § 410.30."

*Britton v. Dallas Airmotive, Inc.* (2007) 153 Cal.App.4th 127 (*Britton*), on which LSI relies, poses no obstacle to the trial court's ruling. *Britton* rejected the plaintiff's argument that section 418.10 barred the defendants' inconvenient forum motion as untimely. *Britton* explained the defendants there were entitled *to renew* after remand from federal court an earlier forum non conveniens motion the state trial court originally denied. (*Id.* at pp. 130-131.) The two defendants had joined in another defendant's inconvenient forum motion before the matter had been removed to federal court, where they presumably answered the complaint. (*Ibid.*) Accordingly, because the defendants had "properly raised [the issue] at the outset of the litigation" under section 418.10 by joining their codefendant's forum motion, the trial court was entitled "to reconsider the issue" when the defendants renewed their motion under section 410.30 after remand from the federal court. (*Britton*, at p. 133.)

In concluding the trial court could entertain the renewed motion, *Britton* expressly cautioned: "[W]e do not read section 410.30, subdivision (b) to mean that a

9

defendant who has waived the *forum non conveniens* issue under section 418.10, subdivision (e)(3) may later bring a motion under section 410.30, subdivision (a). If the issue has been waived under the express language of section 418.10, subdivision (e)(3), then the defendant may not raise it at any point in the litigation. Section 410.30, subdivision (b) does not purport to allow a party to raise issues waived at the outset of the litigation, and its general language does not contradict the subsequently enacted and specific waiver provision in section 418.10. [Citations.]" (*Britton*, *supra*, 153 Cal.App.4th at pp. 133-134, italics added.) But here, as explained, Shimadzu did not forfeit its forum challenge, but timely and expressly raised it at the time of filing its demurrer. We therefore turn to LSI's claim that its tort causes of action did not fall within the forum selection clause.

B.      *The Forum Selection Clause Applied to LSI's Tort Causes of Action*

LSI contends the trial court erred by dismissing its tort causes of action for intentional interference with prospective economic advantage and intentional interference with an economic relationship. LSI argues the forum selection clause in its contract with Shimadzu does not extend to these claims. The scope of a forum selection clause is a matter of contract interpretation. (*Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 1677 (*Cal-State*); Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2017) ¶ 3:175, p. 3-61.) "'[F]orum selection clauses can be equally applicable to contractual and tort causes of action. [Citations.] Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract. [Citations.]'" (*Bancomer, S.A. v. Superior Court* (1996) 44 Cal.App.4th 1450, 1461.) When, as here, no conflicting extrinsic evidence has been presented, the interpretation of a forum selection clause is a legal question that we review de novo. [Citation.]" (*Animal Film, LLC v. D.E.J. Productions, Inc.* (2011) 193 Cal.App.4th 466, 471 (*Animal Film*).)

10

The parties devoted a paragraph in their Sales Agreement to choice of law and forum selection, stating: "The Sales Agreement is made and entered into, and shall be governed, enforced and interpreted in accordance with the laws of the State of Maryland. The Buyer hereby expressly consents to the jurisdiction of the courts of the State of Maryland with regard to *all issues and questions of law or fact pertaining to the Sales Agreement*. In the event that either party commences litigation to enforce the Sales Agreement, *said litigation shall be brought in* the courts of Howard County, Maryland." (Italics added.)

LSI argues its tort causes of action do not fall within this language or pertain to the Sales Agreement generally because they "are premised on a wholly different contract — between LSI and UB Laboratories." LSI correctly observes that tortious interference claims require a business relationship between a third party and the plaintiff, and not necessarily between the plaintiff and the defendant. "The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126 [though a defendant may be "a stranger" to the plaintiff's contract or to the plaintiff's plans for economic advantage with a third party, the defendant may still be liable for interference].

But LSI's emphasis on its UBL contract and potential further business plans with UBL misses the point. LSI's complaint discloses that the gravamen of its prospective advantage and contract interference claims against Shimadzu rest on Shimadzu's alleged disclosure of "confidential pricing information" to UBL, contrary to a confidentiality clause in LSI's contract *with Shimadzu* to purchase Shimadzu devices. Specifically, LSI asserted Shimadzu "divulged confidential pricing information to

11

Defendant UBL *related to [LSI's] purchase of* the LCMS 8040 [device *from Shimadzu*] as well as other items LSI sold to UBL." (Italics added.) According to LSI's complaint, "This unauthorized and *contractually prohibited* disclosure induced Defendant UBL . . . to stop making payments [for the LCMS 8040 device] . . . to LSI under [UBL's] Rental Agreement." (Italics added.) Apparently, UBL may have believed it could acquire Shimadzu's devices for less than it was paying LSI to rent them.

In any event, LSI's allegations reveal that its tort claims against Shimadzu were inextricably intertwined with its contract to purchase Shimadzu devices. Indeed, in light of LSI's allegations expressly stating Shimadzu's "contractually prohibited disclosure" formed the basis for LSI's tort claims and that this wrongful disclosure "related to [LSI's] purchase of the LCMS 8040" from Shimadzu, the connection could not be clearer. LSI asserts that "interfering with a known contract by disclosing what the Plaintiff was paying for the machine is a wrongful act with or without the confidentiality provision in the [LSI-Shimadzu] Sales Agreement." But LSI does not explain why or how a seller can be held to secrecy regarding the price it charges for its own goods absent a confidentiality agreement. Moreover, LSI based its complaint on the existence of such an agreement in the LSI-Shimadzu contract, bringing its tort claims within the forum selection clause's express application to "all issues . . . . pertaining to the Sales Agreement." (See *Cal-State*, *supra*, 12 Cal.App.4th at p. 1677 [forum selection clause governing "'all causes of action arising directly or indirectly from the business relationship evidenced by the contract'" included tort claims].) Consequently, the trial court did not err in dismissing LSI's tort claims under the forum selection clause.

C.     *The Forum Selection Clause Was Mandatory as to LSI's Tort Claims*

LSI next argues the trial court erred in finding the parties' forum selection clause mandated Maryland as the proper forum for its tort claims, rather than conducting an analysis under discretionary forum *non conveniens* factors. The party oppoising

12

enforcement of a forum selection clause bears the burden of proving it should not be enforced. (*Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 147 (*Verdugo*).) Forum selection clauses may be either mandatory or permissive (*Animal Film*, *supra*, 193 Cal.App.4th at p. 471; *Berg v. MTC Electronics Technologies Co.* (1998) 61 Cal.App.4th 349, 359 (*Berg*), and we review the issue de novo on appeal. (*Intershop Communications AG v. Superior Court* (2002) 104 Cal.App.4th 191, 199.) In a permissive clause, the parties merely concede in advance that courts in a particular locale can properly exercise jurisdiction over disputes that may arise, but in failing to *require* litigation there, they implicitly recognize other courts also may have jurisdiction. "Clauses that grant jurisdiction to a particular forum without expressly making that forum the mandatory situs for resolution of disputes are considered permissive only." (*Berg*, at p. 359-360 [advance consent precludes objecting to the designated forum "on the ground that the court lacks personal jurisdiction," but "does not mean that the same subject matter cannot be litigated in any other court"].) Under a permissive clause, the traditional forum non conveniens factors apply to determine the proper forum (*Animal Film*, at p. 471), which "requires . . . weighing . . . a gamut of factors of public and private convenience." (*Cal-State*, *supra*, 12 Cal.App.4th at p. 1683.)

In contrast, courts give effect to mandatory forum selection clauses without regard to the parties' convenience; the only question is whether enforcing the clause would be unfair or unreasonable. (*Verdugo*, *supra*, 237 Cal.App.4th at p. 147; Weil & Brown, *supra*, § 3:444.6, p. 3-130.) Because forum selection provisions are presumed valid, the party seeking to prevent enforcement bears the burden to show enforcement would be unreasonable. (*Miller-Leigh*, *supra*, 152 Cal.App.4th at p. 1149.) A party that "has contracted away its right to choose its home forum . . . has presumably done so because the value it receives from the negotiated deal is worth the chance the party may be required to litigate disputes elsewhere. To apply the [convenience] factors in this

13

context would in essence be rewriting the bargain struck between the parties." (*Cal-State*, *supra*, 12 Cal.App.4th at p. 1683.)

Examples of mandatory forum selection clauses include: "'claims arising hereunder shall, at the Licensor's election, be prosecuted in the appropriate court in Ontario'" (*CQL Original Products, Inc. v. National Hockey League Players' Assn.* (1995) 39 Cal.App.4th 1347, 1352), "[a]ny appropriate state or federal district court in [the designated forum] shall have exclusive jurisdiction" (*Cal-State*, *supra*, 12 Cal.App.4th at p. 1672, fn. 4), "'[A]ny and all litigation that may arise as a result of the Agreement shall be litigated in Dade County, Florida'" (*Lu v. Dryclean-U.S.A. of California, Inc.* (1992) 11 Cal.App.4th 1490, 1492), "'Any controversy or claim arising out of or relating to this Agreement . . . shall be litigated in [the designated forum]'" (*Furda v. Superior Court* (1984) 161 Cal.App.3d 418, 422, fn. 1).

LSI attempts to draw a distinction between two provisions in the parties' forum selection clause by reading them in isolation. LSI acknowledges the final sentence in the paragraph stating the parties' choice of forum is mandatory in nature, requiring that "litigation to enforce the Sales Agreement . . . shall be brought in . . . Howard County, Maryland." But LSI focuses on the preceding sentence stating that the Buyer (LSI) "*consents to* jurisdiction of the courts of the State of Maryland with regard to all issues and questions of law or fact *pertaining to the Sales Agreement*." (Italics added.) Resurrecting its claim that its tort causes of action do not pertain to the Sales Agreement, LSI argues its mere "consent" to jurisdiction in one sentence in the forum selection paragraph operates permissively for claims that do not involve, as stated in the final sentence, "litigation to enforce the Sales Agreement." In other words, because "LSI's tort causes of action require no interpretation or enforcement of the Sales Agreement, . . . the mandatory forum selection clause in the Sales Agreement cannot govern them." According to LSI, the trial court therefore was required to evaluate — regarding LSI's

14

tort claims only — the traditional convenience factors associated with permissive forum selection clauses.

But LSI's argument fails in its premise; as discussed, its tort claims pertain to the Sales Agreement and therefore fall under the mandatory provision in the forum selection clause governing "litigation to enforce the Sales Agreement." Moreover, we must interpret contract provisions as a whole and not in isolation. (*Dowling v. Farmers Ins. Exchange* (2012) 208 Cal.App.4th 685, 695 ["'We consider the contract as a whole and interpret its language in context so as to give effect to each provision, rather than interpret contractual language in isolation'"].) Because LSI's tort causes of action are based on its claim that the Sales Agreement required Shimadzu to maintain confidentiality regarding its prices, LSI's tort claims are intertwined with the contract. To echo another court, when contractual and noncontractual claims are bound up together, "we seriously doubt the parties would intend 'that the laws of multiple jurisdictions would apply to a single controversy having its origin in a single, contract-based relationship.' [Citation.]" (*Olnick v. BMG Entertainment* (2006) 138 Cal.App.4th 1286, 1300 [wrongful discharge and age discrimination claims inextricable from parties' employment agreement].) Consequently, there is no merit to LSI's claim its tort causes of action had to be analyzed separately on permissive, forum non conveniens grounds.

D.          *The Trial Court Did Not Err in Dismissing Rather than Staying the Lawsuit*

Finally, LSI argues for the first time on appeal that the trial court erred by dismissing the action rather than staying it. "[N]ot even a 'mandatory' forum selection clause can completely eliminate a court's discretion to make appropriate rulings regarding choice of forum . . . ." (*Berg*, *supra*, 61 Cal.App.4th at p. 358.) Consequently, whether to grant a motion to dismiss or stay an action on forum non conveniens grounds rests in the trial court's sound discretion, requiring appellate deference on review. (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751; *America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 9.) LSI fails to cite and we have found no case in which

15

a trial court abused its discretion by dismissing rather than staying a case involving a mandatory forum selection clause.  As the matter is one of discretion, LSI's failure to preserve the issue is fatal.  "[T]o preserve an issue for appeal, a party ordinarily must raise the objection in the trial court.  [Citation.] 'The rule that contentions not raised in the trial court will not be considered on appeal is founded on considerations of fairness to the court and opposing party, and on the practical need for an orderly and efficient administration of the law.' [Citations.]  Otherwise, opposing parties and trial courts would be deprived of opportunities to correct alleged errors, and parties and appellate courts would be required to deplete costly resources 'to address purported errors which could have been rectified in the trial court had an objection been made.' [Citation.]" (*In re S.C.* (2006) 138 Cal.App.4th 396, 406.)  Because LSI never argued a stay instead of dismissal was required, the trial court did not err "in failing to conduct an analysis it was not asked to conduct." (*People v. Partida* (2005) 37 Cal.4th 428, 435.)

III

DISPOSITION

The trial court's dismissal order is affirmed.  Shimadzu is entitled to its costs on appeal.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.

16

Filed 11/21/17

**CERTIFIED FOR PARTIAL PUBLICATION**\*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LABORATORY SPECIALISTS INTERNATIONAL, INC., <br><br>     Plaintiff and Appellant, <br><br>       v. <br><br> SHIMADZU SCIENTIFIC INSTRUMENTS, INC., <br><br>     Defendant and Respondent. | G054056 <br><br> (Super. Ct. No. 30-2015-00812029) <br><br> ORDER MODIFYING OPINION, DENYING REHEARING, AND CERTIFYING OPINION FOR PARTIAL PUBLICATION; NO CHANGE IN JUDGMENT |

The opinion filed on October 23, 2017, is hereby modified as follows:

On page 2, in the third sentence of the opinion's opening paragraph, delete the second use of the word "dismissal," in the inapt "demurrer dismissal" phrase, as follows: "LSI contends Shimadzu committed a fatal procedural misstep by requesting a dismissal *in* its demurrer dismissal based on the forum selection clause, rather than by a separate motion, and that the trial court erred by granting Shimadzu leave to recast its request for dismissal in a separate motion." And substitute the following new sentence in its place:

> LSI contends Shimadzu committed a fatal procedural misstep
> by requesting a dismissal *in* its demurrer based on the forum

---

\*     Pursuant to California Rules of Court, rule 8.1105(b) and 8.1110, the opinion is certified for publication with the exception of Parts B and C.

selection clause, rather than by a separate motion, and that the trial court erred by granting Shimadzu leave to recast its request for dismissal in a separate motion.

On page 7, delete the last sentence and citation of the second full paragraph (specifically: "Instead, *Miller-Leigh* observed that when the defendants presented the trial court with a demurrer asserting a forum selection clause, the court 'could have considered this matter on its own motion as authorized by section 410.30, subdivision (a).' (*Miller-Leigh*, at p. 1150.)"), and substitute the following new sentence and citation in its place:

> Instead, *Miller-Leigh* observed that "a party seeking to enforce a forum selection clause cannot do so by means of a demurrer," but explained the trial court "could have considered this matter on its own motion as authorized by section 410.30, subdivision (a)." (*Miller-Leigh*, at pp. 1149, 1150.)

These modifications do not change the judgment. Appellant's petition for rehearing is DENIED. Respondent has requested that we certify our opinion for publication. It appears that portions of the opinion meet the standards set forth for partial publication in California Rules of Court, rule 8.1105(c). We therefore CERTIFY the opinion for publication, with the exception of Parts B and C.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.


2