Filed 3/14/24  Dowling v. Uriostegui CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| GREGORY DOWLING as Trustee, etc., <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> DIANE URIOSTEGUI, <br><br>     Defendant and Appellant. | B323346 <br><br> (Los Angeles County Super. Ct. No. 16STPB03890) |

APPEAL from an order of the Superior Court of Los Angeles County, Lee R. Bogdanoff, Judge.  Affirmed.

Rob Uriostegui for Defendant and Appellant.

Gifford, Dearing & Abernathy and Henry H. Dearing for Plaintiff and Respondent.

# INTRODUCTION

In her prior appeal Diane Uriostegui challenged the probate court's ruling that an amended trust created by Prescott Scott, which disinherited his son Gregory Dowling and named Uriostegui the trustee and sole beneficiary, was invalid because Uriostegui procured it by undue influence and Prescott lacked capacity to amend the trust. We concluded substantial evidence supported the probate court's findings and affirmed the judgment. (*Dowling v. Uriostegui* (Mar. 16, 2020, B294046) [nonpub. opn.] (*Uriostegui I*).

The judgment, now affirmed, required Uriostegui to provide an accounting to allow the probate court to determine the amount of money she had wrongfully taken from the trust while she was trustee. When after three attempts Uriostegui failed to submit a proper accounting, Gregory, the successor trustee, filed a petition seeking restitution, damages, and interest. On July 12, 2022 the probate court held a hearing and awarded Gregory $1,293,138.27 in restitution, plus $552,500 in interest.

Uriostegui appeals from the probate court's July 12, 2022 order, arguing that the court violated the one final judgment rule and that the court did not have personal jurisdiction over her. We conclude both arguments are legally incorrect and affirm the probate court's order. We do not reach Uriostegui's challenges to various other probate court rulings between 2018 and 2020 because she did not appeal from those orders and the time to do so has long since expired.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Uriostegui Uses Undue Influence To Get Prescott To Amend the Family Trust, and the Probate Court Voids It*

As we explained in *Uriostegui I,* in 2005 Prescott and Ellen Dowling created a revocable trust naming the couple's two children, Gregory and Richard, as beneficiaries, but provided that Richard's share would go to Gregory in the event Richard predeceased either Prescott or Ellen. The trust was amended in 2009, but maintained essentially the same distribution provisions. Ellen died in July 2011; Richard in March 2012.

In March 2012 Uriostegui, who dated Richard in the 1990s, inherited property on Olive Street. In May 2012 Prescott contributed $359,138 to pay off a promissory note secured by a deed of trust on the Olive Street property. In a letter Prescott wrote Uriostegui, he described the payoff as an investment that would allow Uriostegui to live in the home during her lifetime and allow Uriostegui's son, Rob Uriostegui, and Gregory to "have the option, to either sell the house or keep it for a rental at their discretion" after both Prescott and Uriostegui died.

By 2014 Prescott was becoming increasingly angry with Gregory, and in 2015 an attorney named John Morris prepared an amended trust (the 2015 Trust). The 2015 Trust disinherited Gregory and Gregory's children and made Uriostegui the sole beneficiary of the trust.

Prescott died on June 21, 2016. Uriostegui took $1.8 million of trust assets, put it in her personal account, and began to spend it. Although she testified she could not remember

how much she spent, by the time of trial Uriostegui had returned to her lawyers' trust account only $750,000 of the $1.8 million.

In October 2016 Gregory filed a petition under Probate Code section 17200 to void the 2015 Trust on the grounds that Uriostegui procured it through undue influence and that Prescott lacked the capacity in 2015 to amend the trust. Gregory sought an order distributing the trust assets pursuant to the 2009 version of the trust Prescott and Ellen had signed. Gregory also brought a cause of action for financial elder abuse.

Following a court trial, the probate court issued a 108-page statement of decision on August 15, 2018 and entered judgment on November 2, 2018. The probate court declared the 2015 Trust void because Uriostegui procured it through undue influence and because Prescott lacked the capacity to amend the trust as a result of "delusions." The court ordered Gregory as the successor trustee to administer the trust according to the terms of the 2009 trust documents. The court ordered Uriostegui to return the trust assets she had taken (plus interest), transfer title to Prescott's residence to Gregory as the successor trustee of the trust, file an accounting as a constructive trustee, refrain from making any transfers that would impede the court's orders, and pay Gregory his attorneys' fees and costs. The court also ordered Uriostegui to transfer to Gregory an ownership interest in the Olive Street property "equal to the current value of the share of the residence purchased by Prescott Dowling" and imposed a lien on Uriostegui's remaining interest in the property. Finally, the court found that Uriostegui committed financial elder abuse and that Gregory was entitled to attorneys' fees and costs.

Uriostegui appealed. We concluded substantial evidence supported the probate court's findings that Uriostegui procured

4

the 2015 amendment through undue influence and that Prescott lacked capacity in 2015 to amend the trust. We modified the judgment, however, to delete the provision ordering Uriostegui to transfer an ownership interest in the Olive Street property to Gregory because his petition did not include a claim seeking an interest in the property. (*Uriostegui I, supra*, B294046.)

On remand the probate court entered an amended judgment, dated August 31, 2020, consistent with our opinion. The amended judgment included a provision from the 2018 judgment, not affected by our opinion in *Uriostegui I*, "that an evidentiary hearing regarding restitution and damages be held in conformity of this ruling [i.e., the 2018 judgment], said hearing to commence after approval of [Uriostegui's] accounting."

B. *The Probate Court Conducts Further Proceedings on the Accounting*

Uriostegui never filed a satisfactory accounting the court could approve. On February 7, 2019 she filed her first accounting. The probate court sustained Gregory's objection to that accounting and ordered Uriostegui to prepare a new one. Uriostegui filed a second accounting, which the probate court rejected too. Uriostegui filed a third accounting, which she called a first supplement to her second accounting. Gregory again objected, arguing that Uriostegui was improperly claiming certain credits, that some of her claimed expenditures while she was trustee were improper, and that an "in-court examination is necessary to both explain and track such expenditures." Gregory also asked the court to order Uriostegui to pay him

5

$1,393,138.27,[1] plus interest, to make the trust whole. The probate court sustained Gregory's objections and instructed him that, to the extent he sought affirmative relief, he should refile his objections as a petition.

On February 11, 2021 Gregory, as directed, filed a petition seeking restitution, compensatory damages, and interest in the amount of $1,393,138.27. Uriostegui filed a special motion to strike under Code of Procedure section 425.16, arguing her accountings were "protected by the First Amendment and litigation privilege" because she submitted them to the probate court. The probate court denied the motion, ruling Gregory "is not arguing [Uriostegui's filing of] these accountings caused $1,393,189.26 plus interest and remedies in damages. The claimed award amount is based on what [Gregory] contends is necessary to 'make the trust whole' from [Uriostegui's] earlier misappropriation of Trust assets and wrongful conduct. [Citation.] This request follows the language of the Judgment which provides that an evidentiary hearing is to be held 'regarding restitution and damages.' [Citation.] The fact that [Gregory] disputes the accuracy of the accountings and uses them in coming to the requested reward amount merely involves an evidentiary matter." We denied Uriostegui's petition for writ of mandate challenging the probate court's order denying her

---

[1]     Gregory claimed this amount included attorneys' fees not properly chargeable to the trust ($50,000); improper cash withdrawals ($135,770.77); her retained portion from the attorney trust account ($230,655.75); insurance ($6,080.96), telephone charges ($5,013.10) and internet charges ($2,092.61) that were not related to the administration of the trust; personal items improperly characterized as miscellaneous trust expenses ($955,028.95); and an improper gift to her son ($8,496.13).

6

special motion to strike. (*Uriostegui v. Superior Court* (Nov. 3, 2021, B315917) [order].)[2]

Uriostegui filed a demurrer, arguing the probate court lacked jurisdiction "because there is a judgment and remittitur in this case." She also claimed Gregory's petition was barred by the statute of limitations and claim preclusion and that he had not sufficiently pleaded the causes of action in the petition. The probate court sustained the demurrer with leave to amend.

Gregory filed a first amended petition on January 10, 2022, claiming an order awarding restitution, compensatory damages, and interest was "necessary to make the trust whole without the necessity of an approved accounting, because it was obvious that Uriostegui had no intention to file an approvable accounting for her administration of the trust estate." Gregory asked the court to order Uriostegui to return $1,393,138.27 plus interest to the trust. Uriostegui objected to the petition, arguing the probate court lacked jurisdiction.

Uriostegui then sought to disqualify the probate court judge under Code of Civil Procedure sections 170.1, subdivision (a)(6), and 170.3, subdivision (c)(1). In support of the motion to disqualify the judge, counsel for Uriostegui (her son Rob) submitted a declaration stating that Gregory "concocted an illicit scheme to collaterally attack the remittitur and amended judgment by filing pretextual objections to . . . Uriostegui's accountings and sought exemplary damages in addition to compensatory damages in the objections" and that the probate

---

[2]      An order denying a special motion to strike is appealable (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 645) and therefore generally not reviewable by writ.

7

court judge "allowing Gregory . . . to seek additional damages after the remittitur was issued would cause a reasonable person to have doubt that [the judge] could be impartial in this matter." The probate court struck the statement of disqualification, stating: "To the extent Ms. Uriostegui maintains that the Court ruled incorrectly, . . . her remedy for an erroneous ruling is not a motion to disqualify, but rather review by appeal or writ from the ruling." We denied Uriostegui's ensuing petition for writ of mandate, which argued the probate judge showed "disobedience to the Remittitur of this Court" because "the Remittitur prohibited Gregory Dowling from filing supplemental pleadings post-remittitur." (*Uriostegui v. Superior Court* (Aug. 3, 2022, B321845) [order].)

On July 12, 2022 the probate court ruled on Gregory's first amended petition. After concluding Uriostegui was entitled to a $100,000 credit (resulting from a malpractice action Gregory filed against Morris, the attorney who prepared the 2015 Trust for Uriostegui), the court ruled that it had previously ordered Uriostegui to make the trust whole and to pay interest at the rate of 7 percent, that the court had ordered Uriostegui to file an accounting, and that Uriostegui failed three times to submit an acceptable accounting. The probate court awarded Gregory, as successor trustee of the trust, $1,293,138.27, plus $552,500 in interest. Uriostegui timely appealed from the July 12, 2022 order.

8

**DISCUSSION**

A.  *Standard of Review*

"The probate court or judge is the guardian of estates of deceased persons and all proceedings are under the direction of the judge." (*County of Los Angeles v. Morrison* (1940) 15 Cal.2d 368, 371; accord, *Estate of Sapp* (2019) 36 Cal.App.5th 86, 103.) This power includes the right to order a party to provide an accounting. (*Conservatorship of Farrant* (2021) 67 Cal.App.5th 370, 376; see *Babbitt v. Superior Court* (2016) 246 Cal.App.4th 1135, 1141-1142 [Probate Code authorizes the probate court to compel a trustee to provide an accounting]; *Christie v. Kimball* (2012) 202 Cal.App.4th 1407, 1413 ["Determining the need for an accounting is a matter within the trial court's sound discretion."].)

We review the probate court's orders to supervise and protect the assets of a trust or estate for abuse of discretion. (*Estate of Sapp, supra,* 36 Cal.App.5th at pp. 103-104; *Estate of Kerkorian* (2018) 19 Cal.App.5th 709, 718; *Manson v. Shepherd* (2010) 188 Cal.App.4th 1244, 1258.) We review de novo issues regarding the probate court's jurisdiction and authority. (*Conservatorship of Kane* (2006) 137 Cal.App.4th 400, 405.)

B.    *The Probate Court's July 12, 2022 Order Does Not Violate the One Final Judgment Rule*

Uriostegui's primary argument is that the probate court lacked jurisdiction on July 12, 2022 to enter what she calls a "second judgment" because "'[t]here can only be one judgment in any case between the same parties.'"  Uriostegui's argument is doubly wrong.

Uriostegui is referring to the one final judgment rule, which is a procedural principle of appellate jurisdiction that concerns the appealability of an order or judgment; it has nothing to do with superior court jurisdiction.  The rule avoids piecemeal appeals by limiting "appellate review to trial court judgments that finally dispose of all issues."  (*Kurwa v. Kislinger* (2017) 4 Cal.5th 109, 114; see *Aixtron, Inc. v. Veeco Instruments Inc.* (2020) 52 Cal.App.5th 360, 384 ["'The one final judgment rule is a "fundamental principle of appellate practice that prohibits review of intermediate rulings by appeal until final resolution of the case."'"]; *Walton v. Magno* (1994) 25 Cal.App.4th 1237, 1240 ["'The "one final judgment rule" has been denominated a basic principle of appellate practice'"].)  "Under the one final judgment rule, '"an appeal may be taken only from the final judgment in an entire action."'"  (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 756; see *Hoveida v. Scripps Health* (2005) 125 Cal.App.4th 1466, 1468 [under the one final judgment rule "[a]n appeal cannot be taken from a judgment that fails to dispose of all causes of action between the parties"].)  The one final judgment rule has no relevance to whether the probate court had jurisdiction on July 12, 2022 to award restitution or attorneys' fees.

But even if this court's jurisdiction under the one final judgment rule were somehow relevant to whether the probate

10

court had jurisdiction to make the July 12, 2022 order, the rule would not apply.  The rules governing probate appeals are different from those governing civil appeals.

"The right to appeal is purely statutory."  (*Conservatorship of Gregory D.* (2013) 214 Cal.App.4th 62, 67; see *Estate of Horman* (1968) 265 Cal.App.2d 796, 801; see also *Dow v. Lassen Irrigation Co.* (2022) 75 Cal.App.5th 482, 483 ["The right to appeal is purely statutory, since neither the federal Constitution nor state Constitution provides for it."].)  In civil cases, the appellant may appeal only from a single, final judgment that determines "the rights of the parties in an action or proceeding." (Code Civ. Proc., § 577; see *Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5 ["A judgment is the final determination of the rights of the parties [citation] ""when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined."""].)  Code of Civil Procedure section 904.1 "codifies the 'one final judgment rule,' which provides that an ""appeal may be taken only from the final judgment in an entire action."""  (*Kaiser Foundation Health Plan, Inc. v. Superior Court* (2017) 13 Cal.App.5th 1125, 1138; see *Aixtron, Inc. v. Veeco Instruments, Inc.*, *supra*, 52 Cal.App.5th at p. 382.)

In probate cases, however, an appellant may appeal from a variety of orders made appealable by the Probate Code, as set forth in Probate Code sections 1300 through 1304.  (See Code Civ. Proc., § 904.1, subd. (a) ["[a]n appeal, other than in a limited civil case, may be taken . . . [¶] . . . [¶] (10) [f]rom an order made appealable by the Probate Code"]; *Kalenian v. Insen* (2014) 225 Cal.App.4th 569, 575-576 ["the Probate Code provisions

11

concerning appealability are exclusive," and the "appealability of probate disputes in general is governed by [Probate Code] section 1300"]; *Estate of Stoddart* (2004) 115 Cal.App.4th 1118, 1125-1126 ["It is well established that '[a]ppeals which may be taken from orders in probate proceedings are set forth in . . . the Probate Code, and its provisions are exclusive.'"].) This is because the administration of a trust or estate is a "series of separate proceedings, each of which is intended to be final." (*Estate of Callnon* (1969) 70 Cal.2d 150, 156; accord, *In re Loring Estate* (1946) 29 Cal.2d 423, 428; *Meyer v. Meyer* (2008) 162 Cal.App.4th 983, 992; see Ross, Cal. Practice Guide: Probate (The Rutter Group 2019) ¶ 3:3 [probate "is a continuous proceeding" which "involves a series of stages, each of which may result in an appealable order or judgment"].)

Thus, a probate court order may be appealable under the Probate Code even if it does not resolve all claims and issues in the action. Which for purposes of this appeal means that, even if Uriostegui were challenging our jurisdiction rather than the probate court's jurisdiction, the one final judgment rule would not apply. Either way, the probate court had jurisdiction to make further orders after we issued our remittitur in *Uriostegui I*.

C.     *The Remittitur in* Uriostegui I *Did Not Preclude the Probate Court From Making Its July 12, 2022 Order*

Uriostegui argues the July 12, 2022 order was a "material variance" from the probate court's 2018 judgment and this court's remittitur in *Uriostegui I*. (See *Medina v. Superior Court* (2021) 65 Cal.App.5th 1197, 1226 ["'[t]he order of the reviewing court is contained in its remittitur, which defines the scope of the

12

jurisdiction of the court to which the matter is returned'"].) Uriostegui mischaracterizes our opinion in *Uriostegui I*.

In *Uriostegui I* we concluded substantial evidence supported the probate court's findings that the 2015 Trust was invalid and that the trust's assets should be distributed pursuant to the 2009 trust documents. We left undisturbed that part of the judgment requiring Uriostegui to return to the trust assets she had taken (plus interest), file an accounting as a constructive trustee, not make any transfers that would impede the court's orders, and pay Gregory his attorneys' fees and costs. That is exactly what the probate court did on July 12, 2022. (See *Estate of Jenanyan* (1982) 31 Cal.3d 703, 708 ["The probate of an estate consists of a series of procedures, from the initial appointment of an executor or administrator to the final distribution of the estate."].)

Although the amended judgment contemplated Uriostegui would provide an accounting before the probate court conducted an evidentiary hearing to set the amount of restitution, Uriostegui never prepared an acceptable accounting, which in turn required Gregory (as directed by the court) to file a petition asking the probate court to set an amount of restitution. The probate court ruled on this petition on July 12, 2022 by awarding Gregory $1,845,638.27 in restitution and interest. That's what the probate court was supposed to do. (See Prob. Code, § 17206 ["The court in its discretion may make any orders and take any other action necessary or proper to dispose of the matters presented by the petition"]; *Babbit v. Superior Court, supra*, 246 Cal.App.4th at p. 1144 ["'To preserve [a] trust and to respond to perceived breaches of trust, the probate court has wide, express powers to "make any orders and take any other action

13

necessary or proper to dispose of the matters presented" by [a] section 17200 petition.'"]; *Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 427 ["Proceedings in the probate court 'concerning the internal affairs of the trust' are commenced with the filing of a petition."]; see also *Christie v. Kimball*, *supra*, 202 Cal.App.4th at p. 1413 [probate court has "'inherent equitable power' to take 'remedial action'"].)  There was no error.[3]

D.    *The Probate Court Did Not Lack Personal Jurisdiction over Uriostegui*

Uriostegui argues that all the orders in this case, including the July 12, 2022 order, are void because "[n]o summons for the personal appearance of [her] as an individual defendant was issued [or] served upon [her]."  According to Uriostegui, because probate matters are in rem proceedings, her appearance in response to Gregory's petition under Probate Code section 17200 was not a general appearance as an individual and did not subject her to the jurisdiction of the probate court.  Wrong again.

"Probate proceedings are proceedings in rem," which means the "court's jurisdiction is based on its authority over property

---

[3]    Uriostegui also argues the July 12, 2022 order is void because the first amended petition "did not allege a cause of action" and "[t]here was no justiciable controversy."  She argues that, "[i]f trial courts are allowed to ignore these bedrock rules of finality by one judgment, litigation will never end"; that Gregory "had the audacity to attack this Court's Remittitur improperly collaterally with frivolous objections and petitions," and that Gregory "pulled these litigation stunts because he was enabled by the Superior Court."  This argument, to the extent we understand it, appears to be a recasting of Uriostegui's other arguments, and fails for the same reasons.

14

within its territory." (*Capra v. Capra* (2020) 58 Cal.App.5th 1072, 1082; see *Estate of Buckley* (1982) 132 Cal.App.3d 434, 443 ["A probate proceeding is essentially an in rem proceeding, in which the decedent's assets within the state constitute the res."].) Probate Code section 17003, subdivision (a), however, states that, "[b]y accepting the trusteeship of a trust having its principal place of administration in this state the trustee submits personally to the jurisdiction of the court . . . ." By submitting to personal jurisdiction, trustees like Uriostegui do not have to be personally served with a summons for the probate court to have personal jurisdiction over the trustee (though notice is still required). (See Prob. Code, § 17203, subd. (a)(1) [trustees must be given notice by mail of petitions under section 17200].)

In any event, Uriostegui made a general appearance in the probate court as an individual by filing objections, a demurrer, a special motion to strike, and a petition to disqualify the probate judge, and by appearing at trial, which "is equivalent to personal service of summons on such party." (Code Civ. Proc., § 410.50, subd. (a); see *Estate of Poder* (1969) 274 Cal.App.2d 786, 791 ["[e]ven where improper notice . . . would otherwise deprive a court of jurisdiction to make an order or pronounce judgment, the order or judgment will not be declared void if the complaining party has waived the defect," and a "general appearance constitutes such a waiver"].)

> E.    *We Do Not Have Jurisdiction To Review Uriostegui's Challenges to Other Probate Court Orders*

Uriostegui challenges several orders not identified in her notice of appeal. For example, Uriostegui argues the November 2, 2018 judgment and the August 31, 2020 amended

judgment after *Uriostegui I* are void for uncertainty because they provided the court would calculate the amount of restitution at a later time and because Gregory filed his petition pursuant to Probate Code section 17200 and not Probate Code section 850.[4] Uriostegui also argues we should vacate the November 2, 2018 judgment, as well as the August 31, 2020 amended judgment, because the judge who conducted the trial in 2018 (and who has since retired) did not have jurisdiction to rule on the financial elder abuse cause of action,[5] improperly circumvented the one final judgment rule by requiring Uriostegui to provide an accounting after judgment, and was biased against her "by ignoring the evidence in this case." Uriostegui also attacks the February 20, 2019 cost award and the March 7, 2019 attorneys' fees award, arguing the probate court could not amend the judgment to include these fees and costs while *Uriostegui I* was pending.[6]

---

[4] Contrary to Uriostegui's argument, Gregory properly challenged the validity of the 2015 Trust under Probate Code section 17200, subdivision (b)(3), which provides that "[p]roceedings concerning the internal affairs of a trust include . . . [¶] . . . [¶] . . . determining the validity of a trust provision." (See *Estate of Heggsted* (1993) 16 Cal.App.4th 943, 951 [the argument a petition under Probate Code section 17200 "cannot resolve the legal status of disputed trust property . . . defies common sense and finds no support in the law"].)

[5] Which is incorrect. The probate court has concurrent jurisdiction over elder abuse matters. (See *Estate of Bowles* (2008) 169 Cal.App.4th 684, 696; *Conservatorship of Kayle* (2005) 134 Cal.App.4th 1, 6.)

[6] Which is also incorrect. Attorneys' fees and costs are generally ancillary or collateral to the appeal. (*Varian Medical*

Uriostegui's notice of appeal, however, did not identify any of these orders or judgments. The notice of appeal states she is appealing only from the July 12, 2022 order. Our jurisdiction is limited to reviewing that order. (See *Faunce v. Cate* (2013) 222 Cal.App.4th 166, 170 ["We have no jurisdiction over an order not mentioned in the notice of appeal."]; *Morton v. Wagner* (2007) 156 Cal.App.4th 963, 967 ["While a notice of appeal must be liberally construed, it is the notice of appeal that defines the scope of the appeal by identifying the particular judgment or order being appealed."]; *Estate of Bearns* (1946) 77 Cal.App.2d 221, 223 [reviewing court does not have jurisdiction to review an order not mentioned in notice of appeal].)

But even if Uriostegui had listed some or all of these various orders and judgments in her notice of appeal, we would still lack jurisdiction to review them because the probate court made them more than 180 days ago, and her appeal would be untimely. (See Cal. Rules of Court, rule 8.104(a)(1)(C) & (e) [appeal must be filed within 180 days of judgment or order]; see also *Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 113 ["the filing of a timely notice of appeal is a jurisdictional

*Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 191; see *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 161 ["'The primary example of collateral matters not affected by a notice of appeal are awards of attorney fees or sanctions.'"]; *Bankes v. Lucas* (1992) 9 Cal.App.4th 365, 369 ["filing of a notice of appeal . . . does not prevent the trial court from determining a proper award of attorney fees claimed as costs"].) In addition, Welfare and Institutions Code section 15657.5, subdivision (a), makes an award of attorneys' fees and costs mandatory when the plaintiff proves financial elder abuse. (See also Prob. Code, § 859 [attorneys' fees and costs are recoverable for elder abuse].)

prerequisite"]; *In re A.O.* (2015) 242 Cal.App.4th 145, 148 ["One of the most fundamental rules of appellate review is that the time for filing a notice of appeal is jurisdictional"]; *Dakota Payphone, LLC v. Alcaraz* (2011) 192 Cal.App.4th 493, 509 ["'A party who fails to take a timely appeal from a decision or order from which an appeal might previously have been taken cannot obtain review of it on appeal from a subsequent judgment or order.'"].) This rule applies equally to probate court orders. (See *Estate of Reed* (2017) 16 Cal.App.5th 1122, 1127 ["'orders listed as appealable in the Probate Code must be challenged timely or they become final and binding'"].) Of course, Uriostegui did appeal from the November 2, 2018 judgment, which resulted in *Uriostegui I*. There is no reason to decide that appeal again. (See *Malatka v. Helm* (2010) 188 Cal.App.4th 1074, 1082 ["on an appeal from an appealable ruling, an appellate court will not review earlier appealable rulings"]; *Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1370-1371 ["'Upon an appeal' from an appealable order or judgment, 'the reviewing court may review . . . any intermediate ruling, proceeding, order or decision' [citations], but it may not review an earlier appealable ruling. (Fn. omitted.)"]; *Berge v. International Harvester Co.* (1983) 142 Cal.App.3d 152, 158, fn. 1 ["On appeal from a final judgment, the appellate court may not review any order from which an appeal could have been taken but was not."].)

## DISPOSTION

The July 12, 2022 order is affirmed.  Uriostegui's motion to augment the record on appeal with documents not relevant to this appeal is denied.  Gregory is to recover his costs on appeal.


SEGAL, Acting P. J.


We concur:


FEUER, J.


MARTINEZ, J.

19